No. 87-082

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOHN WIRTALA,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bradley B. Parrish, Lewistown, Motnana

For Respondent:

Honorable Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter, Assistant Attorney General
David Rice, Hill County Attorney, Havre, Montana

---

Submitted on Briefs: February 18, 1988

Decided: March 25, 1988

Filed: MAR 2 5 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Following a trial by jury in the Twelfth Judicial District, Hill County, John Wirtala was convicted of deliberate homicide. Wirtala alleges denial of the right to a speedy trial and sentencing errors. We affirm.

The issues before the Court are:

1. Did the District Court err by failing to grant Wirtala's motion to dismiss for denial of the right to a speedy trial?

2. Did the District Court violate the prohibition against double jeopardy when it amended Wirtala's sentence nine days after the original sentence had been stated in open court but before a judgment had been entered?

3. Did the District Court improperly consider a prior deferred sentence for aggravated assault which had been dismissed?

The case at hand arose as a result of the premeditated murder of Maurice Dannels, Wirtala's step-father. From the record, it is clear that Wirtala and his mother, Eudora "Corky" Dannels, hired Melvin Wendell and Daniel Johnson to murder Maurice Dannels. The murder took place in a Havre motel room on July 22, 1984.

Following an investigation by Missoula and Havre law enforcement agencies, Wirtala was arrested on July 28, 1984. An information was filed in District Court shortly thereafter. Wirtala's motion to disqualify the presiding judge and request for continuance delayed the arraignment until October 18, 1984. At that time, Wirtala pleaded not guilty to the charge of deliberate homicide and conspiracy to commit the same.

After a motion to suppress evidence was denied by the court, Wirtala requested another continuance. Trial was initially set for March 18, 1985, but Wirtala again requested a continuance and filed a limited waiver of speedy trial.

Following another request for continuance, Wirtala entered a plea of guilty to the charge of deliberate homicide on May 31, 1985. However, the guilty plea was rejected by the court. Wirtala subsequently pleaded guilty to deliberate homicide a second time on August 22, 1985 and was sentenced on September 30, 1985.

Wirtala apparently was not pleased with the sentence he received, however. He filed a motion for appointment of new counsel and withdrawal of guilty plea on November 18, 1985. Following yet another defense request for a continuance, Wirtala was permitted to withdraw his guilty plea on May 1, 1986. A trial date of June 2, 1986 was set shortly thereafter.

Trial was eventually held on September 23, 1986. In the meantime, Wirtala had requested two additional continuances and filed a second limited waiver of speedy trial. He now comes before this Court alleging that the delay of 787 days violated his constitutional right to a speedy trial.

### Speedy Trial

The right to a speedy trial "has its roots at the very foundation of our English law heritage." Klopfer v. North Carolina (1967), 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 8. Although the concept was recognized earlier, the Magna Carta (1215) was the first assertion of the people's right to expedited justice and freedom from oppressive pretrial incarceration. As noted by Sir Edward Coke, the Magna Carta insured that:

> [E]very subject of this realme, for injury done to
> him in bonis, terris, vel persona, by any other

> subject, be he ecclesasticall, or temporall, free,
> or bond, man, or woman, old, or young, or be he
> outlawed, excommunicated, or any other without
> exception, may take his remedy by the course of the
> law, and have justice, and right for the injury
> done to him, freely without sale, fully without
> deniall, and speedily without delay.

Klopfer, 386 U.S. at 224, 87 S.Ct. at 994, 18 L.Ed.2d at 8-9, citing Coke, The Second Part of the Institutes of the Laws of England at 55 (Brooke, 5th ed. 1797).

The basic and fundamental nature of the right remains central to our system of ordered liberty. The Sixth Amendment to the United States Constitution and Art. II, § 24 of the Montana Constitution (1972) guarantees any person accused of a crime the right to trial without undue delay. The State's failure to heed the mandate of speedy trial demands dismissal of the charge.

However, the right of speedy trial is necessarily relative. The delays inherent in the protections offered the criminally accused precludes the establishment of rigid time periods. Any inquiry into a speedy trial claim necessitates a functional analysis of the right in light of the surrounding facts and circumstances of each case. State v. Waters (Mont. 1987), 743 P.2d 617, 619, 44 St.Rep. 1705, 1707.

In Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court set forth the test by which to balance the individuals' right to a speedy trial with the state's interest in public justice. This Court adopted the Barker test as stated in State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-64:

> These cases involve a sensitive balancing of four
> factors in which the conduct of the prosecution and
> defendant are weighed in determining whether there

has been a denial of the right to a speedy trial. The four factors to be evaluated and balanced are:

1) Length of delay;

2) Reason for delay;

3) Assertion of the right by defendant; and,

4) Prejudice.

The length of delay triggers a speedy trial analysis. In the instant case, 787 days accrued from the point of arrest in 1984 until the day of trial in 1986. However, the "period of time" which has elapsed since the date of arrest and the "length of delay" for purposes of speedy trial are not interchangeable terms. State v. Robbins (Mont. 1985), 708 P.2d 227, 42 St.Rep. 1440. The length of delay refers only to that time period chargeable to the State. State v. Harvey (Mont. 1986), 713 P.2d 517, 43 St.Rep. 46. Upon examination of the record, we find that the circumstances do not mandate a speedy trial inquiry.

The right to a speedy trial protects those who want to go to trial and objectively demonstrate that desire. It is not designed to reward a criminal defendant who artifically creates delay through an avalanche of motions and hearings. State v. Carden (1977), 173 Mont. 77, 566 P.2d 780. Nor does the right protect a defendant who makes a transparent assertion of the right or sleeps on his rights during the course of a proceeding only to belatedly claim injustice as the day of reckoning draws near.

At no point in time did Wirtala affirmatively attempt to force the issue to a trial on the merits. The record discloses that Wirtala engaged in a continuing course of tactics designed to delay trial. He, inter alia, repeatedly requested continuances; moved to disqualify the judge; twice

entered and withdrew his guilty pleas; and moved for new counsel. The delays caused by such actions, including a reasonable period of time until the next available trial date and the time expended in completing a presentence investigation following the aborted guilty plea, are a direct consequence of Wirtala's own actions. It is clear that Wirtala did not really want to go to trial. In such a situation, he will not now be heard to cry denial of the right to a speedy trial.

## Double Jeopardy

Following conviction, a sentencing hearing was held on October 29, 1986. At that time, the district judge orally sentenced Wirtala to a term of 80 years, plus an additional 5 years, to run consecutively, as a persistent felony offender. Wirtala was also designated as a dangerous offender and remanded to the custody of the county sheriff for transportation to the state prison. The sentence was never reduced to writing, however.

Nine days later, on November 7, 1986, a second sentencing hearing was held. At that time, the district judge amended the original sentence to provide that Wirtala would be ineligible for parole while serving the first 40 years of the 85 year sentence. The sentence, as amended, was subsequently reduced to writing, signed by the district judge, and filed with the court. Wirtala contends that the District Court's subsequent amendment of the sentence pronounced orally in open court constitutes a violation of the prohibition against double jeopardy as provided by the Fifth Amendment to the United States Constitution and Art. II, § 25 of the 1972 Montana Constitution. We disagree.

In United States v. DiFrancesco (1980), 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328, the Court was confronted with the constitutionality of 18 U.S.C. § 3576, which permits the

- 6 -

government to appeal a sentence imposed upon a "dangerous special offender." The controversy arose in connection with DiFrancesco's conviction on racketeering and conspiracy charges. Although the District Court determined that DiFrancesco was a "dangerous special offender" within the meaning of 18 U.S.C. § 3575, he was sentenced to concurrent 10 year terms, the said sentence to be served concurrently with a 9 year term imposed on unrelated federal charges. The government appealed the sentence pursuant to 18 U.S.C. § 3576.

In response to DiFrancesco's claim that appeal was barred by the Fifth Amendment, the Court first examined the nature and purpose of the Double Jeopardy Clause.

> That guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

449 U.S. at 129, 101 S.Ct. at 433, 66 L.Ed.2d at 340, citing North Carolina v. Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656.

In light of the avowed purpose of the Double Jeopardy Clause, the high court determined that the appeal of a criminal sentence by the government is not the evil sought to be prevented. The basic design of the Double Jeopardy Clause is the prevention of successive prosecutions and the attendant threat of multiple punishments. DiFrancesco, 449 U.S. at 132-33, 101 S.Ct. at 435, 66 L.Ed.2d at 342-43. The appeal of a sentence imposed upon conviction does not expose a defendant to successive prosecutions nor multiple punishments for the same crime. A defendant remains subject

to a single determination of guilt or innocence and a single, albeit potentially more severe, punishment.

Contrary to Wirtala's contention, the imposition of a more severe sentence is not equivalent to being twice placed in jeopardy. "The Double Jeopardy Clause does not provide [a] defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." DiFrancesco, 449 U.S. at 137, 101 S.Ct. at 437, 66 L.Ed.2d at 346. Nor does the "Constitution . . . require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." Bozza v. United States (1947), 330 U.S. 160, 166-67, 67 S.Ct. 645, 649, 91 L.Ed. 818, 822. Clearly, the Fifth Amendment does not per se prohibit the increase of a criminal defendant's sentence at all stages of a proceeding. DiFrancesco, supra; see also North Carolina v. Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (Double Jeopardy Clause does not prohibit imposition of a more severe sentence upon retrial). Nor do we adopt a more expansive interpretation of Art. II, § 25, 1972 Montana Constitution. We hold that neither the Double Jeopardy Clause nor Art. II, § 25 prohibited the District Court's subsequent imposition of the parole restriction.

In a related argument, Wirtala contends that he began serving his sentence upon being remanded to the custody of the sheriff. Thus, it is alleged that the District Court lacked jurisdiction to increase his sentence. Wirtala incorrectly assumes that the oral pronouncement of sentence constitutes an entry of judgment.

It is self-evident that a person cannot begin to serve a sentence which does not yet exist. The oral sentence first pronounced by the District Court did not constitute a final judgment. State v. Enfinger (Mont. 1986), 722 P.2d 1170, 1174, 43 St.Rep. 1403, 1408. A trial court remains free to

modify such a ruling until such time as it is reduced to writing, signed by the district judge and filed with the court. Id. We find no error.

### Use of Dismissed Charge in Sentencing

Finally, it is alleged that the District Court improperly relied upon an aggravated assault conviction which had been dismissed following Wirtala's successful completion of the period of deferred imposition of sentence. We agree that the reference to the dismissed charge in the judgment was improper. See State v. Gladue (Mont. 1984), 679 P.2d 1256, 41 St.Rep. 249. However, we find the error to be harmless.

The record demonstrates that Wirtala engaged in a course of conduct which resulted in the premeditated murder of Maurice Dannels. In addition, his criminal history, which includes an armed robbery conviction, demonstrates a continuing disregard for the rights and personal safety of others. The aggravated assault conviction pales in comparison to his other crimes. In light of the facts surrounding the homicide at issue and Wirtala's violent history, we find it inconceivable that the inclusion of the aggravated assault conviction resulted in material prejudice or substantially interfered with his rights.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

- 9 -

_____

William E. Hunt Sr.

L. C. Gulbrandson
          Justices