JUSTICE TRIEWEILER
dissenting.
¶65 I dissent from the majority opinion. I would reverse the order of the District Court which substantively amended its written judgment nearly thirteen months after James Lane began serving his sentence. Lane was not given notice of the amendment before it was entered or after it was entered, and first learned of it when he was advised of its effect by the parole board. New practices could more clearly offend traditional notions of due process and the prohibition against double jeopardy.
*306 ¶66 We have repeatedly, and for good reason, held that the written judgment is the final judgment in criminal proceedings which establishes the terms of a defendant’s sentence and that an oral sentence is not a final judgment. In State v. Enfinger (1986), 222 Mont. 438, 722 P.2d 1170, we held that:
The first sentence pronounced by the court, which omitted the dangerous offender designation, was not reduced to writing, signed by the judge, or filed with the court. Thus, that sentence was not a final judgment. “It is well established that an oral ruling by the trial court is not a final judgment, and that the trial court can change such ruling at any time before the entry of written judgment.” State v. Diaz (1983), 100 N.M. 524, 673 P.2d 501, 502. This Court has never explicitly adopted the Diaz rule but we implicitly stated the same rule in Wilkinson v. State (Mont. 1983), [205 Mont. 237,] 667 P.2d 413, 40 St.Rep. 1239. In Wilkinson we stated:
“[o]nce a valid sentence is imposed, the court lacks jurisdiction to vacate or modify it unless specifically authorized by statute.” (Citations omitted.)
"... there is no way for the judge to change his decision, after the filing of the judgment.” (Emphasis added.)
667 P.2d at 414. The oral sentence first pronounced by the lower court was not a final, valid judgment. Thus, that sentence did not subject appellant to a first “jeopardy.” There was no “former” jeopardy under the first oral sentence because it was not final. Therefore, there can be no double jeopardy. Petition of Williams (1965), 145 Mont. 45, 399 P.2d 732.
Enfinger, 222 Mont. at 444-45, 722 P.2d at 1174.
¶67 We followed Enfinger in State v. Wirtala (1988), 231 Mont. 264, 270, 752 P.2d 177, 181, and State v. Mason (1992), 253 Mont. 419, 425, 833 P.2d 1058, 1061. We ignored those decisions and misstated the rule regarding oral versus written judgments in State v. Graveley (1996), 275 Mont. 519, 524, 915 P.2d 184, 187. To the extent that Graveley is inconsistent with the three prior cases, I would overrule Graveley.
¶68 However, it makes no sense to overrule our repeated precedent in order to save the oral judgment of the District Court in this case. A rule which elevates an oral statement of the district court over a judgment which is reduced to writing, signed by the judge, and filed with the clerk of court is fraught with the potential for human error and, as sure as night follows day, will lead to endless appeals.
*307 ¶69 The modern criminal sentence is a complex matter. Part of it may be deferred or suspended based on numerous conditions; there may be a mandatory minimum sentence or exceptions to the mandatory minimum sentence; and the court may be required to determine that the defendant is a persistent felony offender or that the sentence should be enhanced for some other reason, such as the use of a weapon or the danger the defendant presents to the community. All of these considerations are more likely to be made accurately and reliably after the sentencing judge has had an opportunity to reflect on them and reduce his or her thoughts to writing with the assistance of counsel for the parties. Our cases, in fact, document that a district court’s oral sentence is frequently not the sentence that was intended. In Enftnger, the district court forgot to orally designate the defendant a dangerous offender. See Enfinger, 222 Mont. at 444, 722 P.2d at 1174. In Wirtala, the district court forgot to orally declare the defendant ineligible for parole during a portion of his sentence. See Wirtala, 231 Mont. at 269, 752 P.2d at 180. In Mason, the district court overlooked the condition of sexual offender and alcohol treatment programs as part of its oral sentence. See Mason, 253 Mont. at 425, 833 P.2d at 1061. Since judges are human, we are likely to see a further series of similar human errors in the future based on today’s change of course by the majority.
¶70 The majority bases its decision to elevate an oral sentence over a written sentence on the statutory and constitutional right of a defendant to be present at the time he or she is sentenced. There is no explanation, however, in the majority opinion of why a defendant cannot be present when a written sentence is imposed. In fact, the concurring opinion of Justice Nelson, with which a majority apparently concurs, suggests this very practice. While concurring that the Sixth Amendment and our statutes require a defendant’s presence at the time of sentencing and, therefore, that the oral sentence be final, Justice Nelson then suggests, in order to avoid the “risky practice” of issuing oral sentences as they have been issued in the past, that the sentencing judge hear the evidence and arguments of counsel, but not pronounce sentence at the time of the sentencing hearing, and instead wait until a written judgment is drafted. He suggests that the defendant then be brought back into open court and that the judge pronounce the sentence by reading the entirety of the written judgment and sentence. How is that process any different as a practical matter than retaining our current rule regarding the finality of a written sentence, but requiring a defendant be present when the *308 written sentence is entered? In effect, the majority has held, in order to affirm what the District Court did in this case, that contrary to our prior decisions, the oral sentence of the district court is final, rather than the written sentence, because a defendant has to be present at the time of sentencing; but, since the oral sentence is inherently unreliable, that the district court should wait until his or her thoughts can be reduced to writing and then bring the defendant back into court so that the oral sentence can actually be read from the functional equivalent of a written judgment. If there is some thread of logic to this new approach, as expanded on in the concurring opinion, I have to admit that it has been lost on me.
¶71 Because I conclude that the better reasoned rule elevates the written sentence over the oral sentence of the District Court, and further conclude that the District Court’s March 6, 1996, order substantively altered and enhanced its February 21, 1995, sentence and judgment nearly thirteen months after the defendant had begun serving his sentence, I also conclude, pursuant to our prior case law, that the District Court was without jurisdiction to enter its March 6 order and, therefore, that it was of no effect. See, e.g., State v. Fertterer (1993), 260 Mont. 397, 860 P.2d 151. While I realize that § 46-18-117, MCA, upon which Fertterer was partially based, has been amended since then and that the amended form is applicable in this case, I would conclude that if that statute allows the kind of substantive amendment to enhance a sentence thirteen months after the defendant has begun serving his sentence, then it violates the constitutional prohibitions against double jeopardy found in the Fifth Amendment to the United States Constitution, and Article II, Section 25, of the Montana Constitution. In United States v. Fogel (D.C. Cir. 1987), 829 F.2d 77, the circuit court gave the following explanation with which I fully concur:
The primary purpose of the [double jeopardy] clause is to protect the finality of judgments. United States v. Scott, 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978); Crist v. Bretz, 437 U.S. 28, 33, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24 (1978). One of the interests protected by constitutional finality is that of the defendant to be free from being compelled to “live in a continuing state of anxiety and insecurity.” Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The clause applies to “multiple punishment” because, if it did not apply to punishment, then the prohibition against “multiple trials” would be meaningless; a court could achieve the same result as a second trial by *309 simply resentencing a defendant after he has served all or part of an initial sentence. See Ex parte Lange, 85 U.S. (18 Wall.) at 175, [21 L.Ed. 872]. Similarly, if a court can increase a defendant’s sentence after service has begun, for any reason, or for no reason at all, then the interest in protecting a defendant from being compelled to live in a continuing state of anxiety is lost. This anxiety would seem to be the same as, or akin to, that which would follow from the knowledge that a defendant can be tried again. In each case the underlying fear is that the defendant will receive punishment in addition to that which he had already received. See Ex parte Lange, 85 U.S. (18 Wall.) at 173 (“It is the punishment that would legally follow the second conviction which is the real danger guarded against.”). It would seem to follow that a defendant has, barring any awareness to the contrary, an expectation of finality in the severity of a sentence that is protected by the double jeopardy clause.
Fogel, 829 F.2d at 88.
¶72 For these reasons, I dissent from the majority opinion.