No. 98-005

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 258

STATE OF MONTANA,

Plaintiff and Appellant,

v.

JOHN HENRY ANDERSON,

Defendant and Respondent.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Wibaux,

The Honorable Richard C. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Joseph P. Mazurek, Attorney General

Cregg Coughlin (argued), Assistant Attorney General, Helena, Montana

Ronald S. Efta, Wibaux County Attorney, Wibaux, Montana

For Respondent:

Jay F. Lansing (argued), Attorney at Law, Billings, Montana

Argued:  July 2, 1998

Submitted:  July 23, 1998

Decided:  October 29, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶ **The State of Montana appeals from an order of the Seventh Judicial District Court, Wibaux County, dismissing a charge against John Henry Anderson of driving while under the influence of alcohol (DUI), third offense. We reverse.**

¶ **The issue is whether the District Court erred in dismissing the DUI charge as violative of the Double Jeopardy Clause.**

¶ **John Henry Anderson was arrested on August 17, 1996, and charged with third-offense DUI, violating restrictions imposed on his probationary driver's license, and driving without liability insurance. He was convicted of DUI in justice court and appealed.**

¶ **On appeal in the District Court, Anderson pointed out that the DUI charge had already been considered for purposes of assessing his prospects for rehabilitation at his sentencing on a prior and separate criminal charge of operating a motor vehicle after having been declared a habitual traffic offender. He moved to dismiss the DUI charge on grounds that it violated his right to be free from double jeopardy. The District Court agreed. The State appeals.**

Discussion

¶ Did the District Court err in dismissing the DUI charge as violative of the Double Jeopardy Clause?

¶ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits successive prosecutions or multiple punishment for "the same offence." In this case, the District Court concluded it would have violated that proscription if it had convicted and sentenced Anderson for DUI after the underlying conduct had been considered in determining his sentence on his prior conviction. This Court's standard of review of a question of constitutional law such as this one is plenary. *State v. Schnittgen* (1996), 277 Mont. 291, 295, 922 P.2d 500, 503.

¶ The only case law offered by Anderson to support the District Court's decision is *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, *overruled in part and on other grounds, Alabama v. Smith* (1989), 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865. In *Pearce*, the United States Supreme Court set forth three constitutional protections contained within the double jeopardy guarantee: protection against a separate prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense.

¶ Citing *Pearce*, Anderson argues that he would suffer multiple punishments for the same offense if he were convicted of DUI after that charge had been considered for purposes of increasing his punishment in sentencing on the prior offense. However, the facts of *Pearce*, and consequently the issue before the court in that case, were dissimilar to the facts of the present case. The issue in *Pearce* was whether a criminal defendant whose conviction had been set aside was entitled to Constitutional protection against imposition of a harsher sentence after another conviction upon retrial. The Court held that neither the double jeopardy provision nor the Equal Protection Clause imposed an absolute bar to a more severe sentence upon reconviction; provided, however, that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. *Pearce*, 395 U.S. at 723-25, 89 S.Ct. at 2079-80, 23 L.Ed.2d at 668-69.

¶ The argument raised here by Anderson has been rejected by the United States Supreme Court, in *Witte v. United States* (1995), 515 U.S. 389, 115 S.Ct. 2199, 132 L. Ed.2d 351. Witte was convicted of two separate charges in federal court--a marijuana charge and a cocaine charge. His conduct giving rise to the cocaine charge was taken into account during his sentencing for the marijuana conviction. He argued in the case

on the cocaine charge that he effectively had been "punished" for that conduct during the proceedings on the marijuana charge, and that as a result, the Double Jeopardy Clause barred his subsequent prosecution on the cocaine charge.

¶ The Supreme Court did not agree with that argument. As to the consideration of uncharged conduct in sentencing in a criminal proceeding, the Court reaffirmed its precedent establishing "that a defendant in that situation is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted." *Witte*, 515 U.S. at 397, 115 S.Ct. at 2205, 132 L.Ed.2d at 362. "[C]onsideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." *Witte*, 515 U.S. at 401, 115 S.Ct. at 2207, 132 L.Ed.2d at 365.

¶ Both before and after *Witte*, at least four state courts have also rejected claims similar to Anderson's. In *State v. Heinz* (N.H. 1979), 407 A.2d 814, Heinz, who had previously pled guilty in federal court to embezzlement, raised a double jeopardy challenge to state court charges against him of theft by misapplication. Heinz pointed out that in sentencing him, the federal court had considered his acts later charged as theft by misapplication in state court. In rejecting Heinz's double jeopardy argument, the court noted:

> The defendant apparently feels that he has already been punished for the entire scheme because the federal court considered the additional allegations in sentencing him. . . . In federal practice, the sentencing judge may take into account the circumstances surrounding the offense charged, including indications of criminal conduct for which the defendant has not been tried or convicted. . . . That action does not, however, mean that the conduct can never be the basis for subsequent prosecution[.]

*Heinz*, 407 A.2d at 818.

¶ The Appellate Court of Illinois, Fourth District, in determining that a trial court may properly sentence a person for criminal conduct after having considered such conduct as an aggravating factor in a prior sentencing hearing on unrelated charges, wrote:

> [I]n order to select an appropriate sentence, it is essential that a sentencing court be in possession of the fullest possible information concerning a defendant's life and characteristics. . . .
>
> . . . [T]he defendant . . . was being punished for the offense for which he was charged, and . . . consideration of the other offense in determining that punishment did not amount to punishing the defendant for the other offense. This would be so regardless of whether evidence of the other offense was the sole reason for aggravating a sentence or only one of several reasons for doing so.

*People v. Bankhead* (Ill. App. Ct. 1984), 462 N.E.2d 899, 900-01.

**¶ The Court of Appeals of Alaska has ruled that neither federal nor state double jeopardy prohibitions bar the state from prosecuting a person for perjury following consideration of the perjury, as it relates to prospects for rehabilitation, in sentencing on the underlying criminal matter. *Shannon v. State* (Alaska App. 1989), 771 P.2d 459.**

**¶ Finally, the Supreme Court of Georgia, relying upon *Witte*, reached the same conclusion in *Nance v. State* (Ga. 1996), 471 S.E.2d 216. The Georgia court held that a federal district court's consideration in sentencing Nance on a robbery charge of Nance's post-robbery conduct, including a murder, did not bar a subsequent state indictment for the murder under the double jeopardy clauses of either the federal or Georgia constitutions.**

**¶ Anderson attempts to distinguish *Witte*, *Heinz*, and *Nance* on grounds that they involved the statutory federal Sentencing Guidelines, whereas his case does not. That is a distinction without a difference. In *Witte*, in fact, the United States Supreme Court relied upon pre-Sentencing Guideline cases as precedent, and stated:**

> We are not persuaded by petitioner's suggestion that the Sentencing Guidelines somehow change the constitutional analysis. A defendant has not been "punished" any more for double jeopardy purposes when relevant conduct is included in the calculation of his offense level under the Guidelines than when a pre-Guidelines court, in its discretion, took similar uncharged conduct into account.

*Witte*, 515 U.S. at 401, 115 S.Ct. at 2207, 132 L.Ed.2d at 365.

¶ **In the present case, the District Court concluded that the court which sentenced Anderson for the habitual traffic offender offense had "formed an opinion in its mind that [Anderson] was guilty of the [pending DUI offense]." The court stated that Anderson had obviously received increased punishment based upon a charge for which he had not yet been convicted. Anderson points out that a court could consider conduct for which the defendant is later acquitted and increase a sentence on that basis, leaving the defendant with no ability to go back and ask that his original sentence be reduced.**

¶ **Even accepting this acquitted conduct theory, however, it does not represent a reason to dismiss the DUI charge in this case. It is, if anything, an argument which should have been raised at the proceedings in which the pending DUI charges were considered in sentencing on the other offense.**

¶ **Pending criminal charges will clearly be accorded a different, and generally lesser, weight at a sentencing hearing than are prior criminal convictions. *See, e.g., State v. Goulet* (1996), 277 Mont. 308, 311, 921 P.2d 1245, 1246. However, under the argument advanced by Anderson, consideration of any prior <u>convictions</u> at a criminal sentencing would constitute double jeopardy, as well. This would markedly abrogate this country's longstanding history of taking into consideration at criminal sentencings the defendant's prior criminal behavior. *See Witte*, 515 U.S. at 397-98, 115 S.Ct. at 2205, 132 L.Ed.2d at 362-63.**

¶ **We hold that the District Court erred, under the controlling authority of *Witte*, in dismissing the DUI charge against Anderson. This case is remanded for reinstatement of that charge and for further proceedings consistent with this Opinion.**

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

Justice Leaphart dissenting:

¶ In this case, the State of Montana (the State) appeals from an order of the District Court of the Seventh Judicial District, Wibaux County, dismissing a charge of Driving While Under the Influence of Alcohol (DUI) against Defendant, John Henry Anderson (Anderson). Because the pending DUI charge had been previously considered in fixing the sentence for a separate and unrelated conviction of Operating a Motor Vehicle After Having Been Adjudged a Habitual Traffic Offender (HTO), the District Court ruled that the DUI conviction would result in a violation of Anderson's constitutional right to be free from double jeopardy, as secured by both the State and Federal Constitutions. The State asks that we conclude that the District Court erred in dismissing the DUI charge as violative of double jeopardy. Following the State's prompting, the majority of this Court reverses the District Court's judgment based on the recent United States Supreme Court decision of Witte v. United States (1995), 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351, which is claimed to be "controlling authority." Because I do not feel compelled to march lock-step with the U.S. Supreme Court when it comes to interpreting the Montana Constitution's prohibition against double jeopardy, I dissent.

I.

¶ We have recognized that both the State and Federal Constitutions provide three distinct protections against double jeopardy: first, they protect " 'against a second prosecution for the same offense after acquittal;' " second, they protect " 'against a second prosecution for the same offense after conviction;' " and finally, they protect " 'against multiple punishments for the same offense.' " State v. Chasse (1989), 240

Mont. 341, 343, 783 P.2d 1370, 1371, *quoting* State v. Wirtala (1988), 231 Mont. 264, 269, 752 P.2d 177, 181; *see also* North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65. This case involves the multiple punishments prong of the Double Jeopardy Clause. Under the Montana Constitution, double jeopardy protection is <u>at least</u> as strong as that provided by the Federal Constitution. *See* State v. Nelson (1996), 275 Mont. 86, 89, 910 P.2d 247, 250 ("For purposes of this case, . . . we treat the protections from double jeopardy afforded under both our state and the federal constitutions as co-extensive . . . "). Federal constitutional rights merely present a minimum floor of protection below which state constitutional protections may not decline; however, the Montana Constitution may be found to be more protective of individual rights than its federal counterpart. *See* State v. Johnson (1986), 221 Mont. 503, 512-13, 719 P.2d 1248, 1254-55.

¶ The United States Supreme Court first recognized that the Double Jeopardy Clause of the Fifth Amendment is "designed as much to prevent the criminal from being <u>twice punished</u> for the same offen[s]e as from being twice tried for it." Ex parte Lange (1873), 85 U.S. (18 Wall) 163, 173, 21 L.Ed. 872, 878 (emphasis added). "If there is anything settled in the jurisprudence of England and America, it is that no man [or woman] can be twice lawfully punished for the same offen[s]e." *Lange*, 85 U.S. (18 Wall) at 168, 21 L.Ed. at 876. Given this constitutional heritage, the multiple punishments protection "must be applied to all cases where a second punishment is attempted to be inflicted for the same offen[s]e by a judicial sentence." *Lange*, 85 U.S. (18 Wall) at 173, 21 L.Ed. at 878.

¶ In this case, Anderson asks this Court to consider whether the multiple punishments proscription is violated when a criminal defendant is subsequently convicted and sentenced on a charge that was previously used to enhance a sentence imposed for a separate conviction. In my view, the double jeopardy violation in this case was plain. Anderson was convicted of the HTO offense. The presentencing report suggested certain sanctions. Anderson was then subsequently charged with the DUI and Driving In Violation of Restrictions Imposed on a Probationary Driver's License (Probationary) offenses. Taking these pending charges into consideration, the probation officer substantially increased the severity of his suggested sanctions. On the basis of these suggestions and the testimony of both the probation officer and arresting officer at the sentencing hearing, the court assessed a more severe sentence than would otherwise have been imposed.

¶ Although we may never know the exact sentence that would have been levied had

the pending charges not been considered at sentencing on the HTO offense, the record shows that at least the supervised probation was added as punishment for the pending DUI and Probationary charges. Therefore, the enhanced punishment incorporated into the HTO sentence can, for the purpose of argument, be attributed to the pending charges. Indeed, as the District Court noted: "The original . . . pre-sentence report . . . [contained] no recommendation for any supervised probation. It is highly unlikely that the Court would have exceeded the recommendation made by the probation officer in the pre-sentence report." I would agree. Hence, when the State thereafter tried Anderson on the DUI charge, double jeopardy properly barred that proceeding because Anderson already had been effectively punished for the DUI offense. He was sentenced to 180 days in jail with all but 30 days suspended, fined $770, and had various other conditions imposed upon him.

¶ In other words, when the State tried Anderson on the DUI charge, he was "again put in jeopardy for the same offense . . . ." Art. II, § 25, Mont. Const. "Both the U.S. Constitution, Fifth Amendment and the Montana Constitution, Article II, Section 25, protect individuals from being twice placed in jeopardy." Keating v. Sherlock (1996), 278 Mont. 218, 224, 924 P.2d 1297, 1300. Double jeopardy applies to "multiple punishments" because, if it did not apply to punishment, then the prohibition against "multiple trials" would be meaningless; a court could simply achieve the same effect as a second trial by resentencing a criminal defendant after that defendant had served all or even part of an initial sentence. *See Lange*, 85 U.S. (18 Wall) at 175, 21 L.Ed. at 878.

¶ Indeed, whether multiple punishments or multiple trials are at issue, the "real danger guarded against by the Constitution" is the underlying fear that a criminal defendant will receive punishment in addition to that which has already been imposed. *Lange*, 85 U.S. (18 Wall) at 173, 21 L.Ed. at 878. The Double Jeopardy Clause should thus shield Anderson, for it "protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment." *Witte*, 515 U.S. at 396, 115 S.Ct. at 2204, 132 L.Ed.2d at 361 (citing Price v. Georgia (1970), 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300, 303).

¶ I concur with the conclusion of the District Court that, when the HTO sentence was enhanced on the basis of the pending charges, Anderson "was being punished, at least in part, for charges that had not yet been tried" (emphasis added). The court based this conclusion on the comments of the sentencing judge made during the imposition

No

of Anderson's sentence:

> I have to take into consideration your prospect of rehabilitation. And that's pretty nil. The testimony of [the arresting police officer] . . . indicates that <u>even while this charge was pending, . . . you again violated and showed absolute disregard for the laws of the State of Montana in regard to traffic offenses</u> . . . . [Emphasis added.]

¶ **If the multiple punishments prong of our Double Jeopardy Clause is to mean anything at all, it must proscribe a subsequent prosecution where the conduct at issue in that prosecution has been a definitive factor, as here, in enhancing the punishment received for a prior offense. Ultimately, I stand unconvinced by the statements of the sentencing court that it was not "tak[ing] into consideration any enhancement," as "[t]hat would be inappropriate since this case hasn't been tried." Here, it is evident that the additional punishment of supervised probation was a sentencing enhancement attributable to the pending charges. The comments of the sentencing court viewed as a whole indicate, as the District Court noted, that "the Court had concluded that the defendant was guilty of the pending [DUI] offense" and that the pending charges "formed a basis for the [enhanced] sentence that was imposed." In short, as the District Court pointedly stated, "the <u>defendant was, without a formal trial, found guilty in the mind of the sentencing judge, and the sentence reflected that finding</u>" (emphasis added).**

¶ **Double jeopardy "attaches" in a criminal proceeding whenever a criminal defendant faces the risk of a determination of guilt, whether it be by judge or jury. Serfas v. United States (1975), 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274. Because the sentencing court either prejudged Anderson's guilt on the pending charges or came perilously close to doing so, I would hold that jeopardy has attached to Anderson's DUI charge, thereby preventing a subsequent prosecution and conviction by the State of Montana. "The constitutional prohibition [against double jeopardy] is designed to prevent the individual from being put at risk of conviction at second trial." *Keating*, 278 Mont. at 224, 924 P.2d at 1300. After today's decision, however, I am hard pressed to envision any multiple punishments violation short of the unrealistic hypothetical scenario involving a first trial that results in a conviction and a subsequent trial on the same charge that attempts to impose the identical punishment obtained in the first conviction. Surely, the multiple punishments**

protection afforded by Article II, Section 25 of the Montana Constitution is broader than that.

¶ I simply cannot in good conscience accept the majority's contention that " 'a defendant in [Anderson's] situation is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted.' " *Witte,* 515 U.S. at 397, 115 S.Ct. at 2205, 132 L.Ed.2d at 362. The majority only reaches this conclusion by adopting the United States Supreme Court's formalistic approach to double jeopardy jurisprudence. According to the U.S. Supreme Court, courts must draw a constitutional line between the "offense of conviction" for which sentencing is due and other pending charges considered at sentencing, ignoring the straightforward fact that an enhanced sentence for the "offense of conviction" on the basis of a pending charge is in effect punishment for that pending charge.

¶ In other words, under the U.S. Supreme Court's approach, a criminal defendant cannot be "punished" for an "offense," for purposes of double jeopardy, unless that particular offense was the subject of a criminal charge and conviction. This tautological proposition is logically absurd. If a conviction is obtained on a particular charge, then the defendant is "punished" for only that conviction in sentencing; but if a particular offense is not stated in the charge for which sentencing is due, then the defendant is "not punished" for that offense when it is used to enhance the sentence imposed for the "offense of conviction." This formalistic line-drawing construct, while perhaps well suited to administrative practicability and ease of jurisprudential decision making, is ill suited to the protection of a right as fundamental as double jeopardy. Resolving issues of fundamental rights by recourse to the fact that the State placed different language in the different charges against Anderson in this case simply avoids the difficult, fact-specific question posed to this Court under our Double Jeopardy Clause.

¶ I further note that *Witte*'s formalistic approach in the criminal arena is at odds with recent U.S. Supreme Court double jeopardy precedent in the area of civil punishments. *See generally* Department of Revenue of Montana v. Kurth Ranch (1994), 511 U.S. 767, 780-83, 114 S.Ct. 1937, 1946-48, 128 L.Ed.2d 767, 778-81 (holding that Montana's dangerous drug tax was "the functional equivalent of a successive criminal prosecution" under the Double Jeopardy Clause); United States v. Halper (1989), 490 U.S. 435, 448-49, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487, 502 (holding that a separate civil penalty can be so excessive that it constitutes multiple punishment within the meaning of the Fifth Amendment), *abrogated by* Hudson v. United States

(1997), 118 S.Ct. 488, 139 L.Ed.2d 450. While subsequent decisions of the U.S. Supreme Court have narrowed the utility of this functional approach to multiple punishments, provided that the facts meet the seven criteria enumerated in Kennedy v. Mendoza-Martinez (1963), 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644, 660-61, the possibility remains under federal case law to find a double jeopardy violation for the successive imposition of a civil sanction. *See* Hudson v. United States (1997), 118 S.Ct. 488, 493, 139 L.Ed.2d 450, 459 (listing the seven factors in *Kennedy*). In other words, civil sanctions may be found to be " 'so punitive in form and effect as to render them criminal' " within the meaning of the Double Jeopardy Clause, *Hudson*, 118 S.Ct. at 495, 139 L.Ed.2d at 462, *quoting* United States v. Ursery (1996), 518 U.S. 267, 290, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549, 569, even in the absence of the procedural requirements ordinarily attendant to a criminal conviction.

¶ If "punishment" can be imposed for double jeopardy purposes in civil proceedings when no charge has been filed and no conviction obtained, then certainly "punishment" can be imposed for a criminal "offense" even though that offense is not contained in the particular charge for which sentencing is due--for example, Anderson's effective punishment for the DUI charge in the sentence enhancement for the HTO conviction. That is, Anderson's sentence enhancement can be found to constitute "criminal punishment" under the Double Jeopardy Clause even though he had not yet been formally criminally prosecuted for the pending charges (i.e., a conviction had not yet been obtained by the State).

¶ Thus, I would embrace a functional approach to double jeopardy jurisprudence, one that painstakingly considers the individualized facts in light of the ultimate question whether multiple punishments have or are "in jeopardy" of being imposed. Art. II, § 25, Mont. Const. Indeed, " 'humane interests' " underlie the "intrinsically personal" constitutional guarantee of the Double Jeopardy Clause. *Halper*, 490 U.S. at 447, 109 S. Ct. at 1901, 104 L.Ed.2d at 501. A cookie-cutter approach to double jeopardy jurisprudence does little, in my mind, to protect this humane and intrinsically personal right. I remain firm in my conviction that, in a case like the one at bar, a double jeopardy "violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Halper*, 490 U.S. at 447, 109 S.Ct. at 1901, 104 L.Ed.2d at 501 (approach abrogated by *Hudson*). Taking such a functional approach in this case, I conclude that when the pending charges clearly served to enhance the sentence received under the HTO conviction, Anderson was effectively criminally punished for the DUI charge.

¶ If Anderson was in effect found guilty of the pending DUI charge due to the State's introduction of this evidence at the sentencing hearing, then the Double Jeopardy Clause of the Montana Constitution should prohibit the State from attempting, as it did, to again punish Anderson in a formal trial on the DUI charge. Otherwise, we have condoned the assessment of multiple punishments for the same offense. Here, the majority would allow Anderson to be effectively punished for the DUI offense in the HTO sentencing, and then would allow him to be subsequently prosecuted and punished for the DUI offense in the DUI proceeding. To me, that smacks of "double punishment" under any understanding of the term. The rationale put forward by the State and the majority may as well be saying: " 'We do not punish you twice for the same offense, . . . but we punish you twice as much for one offense solely because you also committed another offense, for which other offense we will also punish you (only once) later on.' " *Witte*, 515 U.S. at 406, 115 S.Ct. at 2210, 132 L.Ed.2d at 368 (Scalia, J., concurring in the judgment).

¶ I, for one, refuse to engage in such double jeopardy double talk. In rejecting such an Orwellian approach, I find myself in agreement with the reasoning found in the pre-*Witte* decision of United States v. Koonce (10th Cir. 1991), 945 F.2d 1145, 1149, *abrogated by Witte*: "The protection from double prosecution would certainly be a hollow one if the government were constitutionally permitted to develop a scheme to punish a person twice for the same conduct just so long as it did not subject him [or her] to two trials." That is precisely what is at issue in this case. A large part of our problem is the current state of criminal law, including the proliferation of multiple, overlapping criminal offenses by the legislature. But this is not a principled reason for ignoring our constitutional heritage, and our solemn duty as constitutional watchdogs, in this case. *See* Jay A. Sigler, Double Jeopardy: The Development of a Legal and Social Policy vii (1969) (double jeopardy "policy-making has been left to the courts because the legislatures have neglected to consider the effect of increasing the number of punishable acts"). " 'It is clear that preventing multiple punishments for the same offense was foremost in the minds of the framers of the double jeopardy clause. . . . Until joinder became permissible and commonplace, however, multiple punishment could result only from multiple trials.' " *Koonce*, 945 F.2d at 1149, *quoting* Comment, Twice Put in Jeopardy, 75 Yale L.J. 262, 266 n.13 (1965).

¶ In a related vein, this Court has previously acknowledged "a trend in prosecutions to use multiple count pleadings," prompting our admonishment that "[p]rosecutors and trial courts should note the limitations and spirit behind the double jeopardy clause so that they may avoid potential constitutional problems." State v. Lindseth

(1983), 203 Mont. 115, 117, 659 P.2d 844, 846; *see also* Brown v. Ohio (1977), 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 193 (double jeopardy "serves principally as a restraint on courts and prosecutors"). In my view, prosecutors in Montana act at their jeopardy when they attempt to enhance a sentence for the offense of conviction on the basis of pending criminal charges. The Double Jeopardy Clause is supposed to be a constraint on the awesome power of the state, with all of its prosecutorial resources, in the face of the individual confronted with a criminal charge. "History has given American law a double jeopardy concept as part of its most fundamental principles. That concept . . . is directed towards the protection of the criminal defendant and against the state's power . . . ." Sigler, *supra*, at 37; *see also* Sigler, *supra*, at 155-187 (discussing the "primary policy issue" underlying the double jeopardy protection, the restraint of discretionary prosecutorial power in the interest of protecting the civil liberties of the greater community).

¶ The essence of the prohibition against double jeopardy "is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm the Government with a potent instrument of oppression." United States v. Martin Linen Supply Co. (1977), 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L. Ed.2d 642, 649. In this case, the sentencing hearing effectively served as a surrogate trial--indeed, a trial without all of the requisite constitutional protections of due process, such as the right to be charged and the right to defend one's case in front of a jury of one's peers. The sentence enhancement based on the pending charges constituted punishment for purposes of double jeopardy. Thus, jeopardy has properly "attached" to the DUI charge, thereby barring a subsequent prosecution by the State of Montana. Allowing the State to proceed on the DUI charge, as the majority does, runs afoul of the multiple punishments protection found in Article II, Section 25 of the Montana Constitution.

¶ The majority points to the slippery slope inherent in this position: "[U]nder the argument advanced by Anderson, consideration of any prior convictions at a criminal trial would constitute double jeopardy, as well." This expansive reading of the Double Jeopardy Clause is not, however, necessary to dispose of this case with a sense of principle. I do not disagree with the rationale behind punishing recidivist offenders more severely based on prior convictions. As the *Witte* Court explained, an enhanced punishment for a recidivist offender does not offend double jeopardy "because the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a

repetitive one.' " *Witte*, 515 U.S. at 400, 115 S.Ct. at 2206, 132 L.Ed.2d at 364 (citations omitted).

¶ We have similarly noted that "increasing the sentence of a persistent felony offender is entirely consistent with the constitutional mandate [in Montana] that 'Laws for the punishment of crime shall be founded on the principles of prevention and reformation.' " State v. Maldonado (1978), 176 Mont. 322, 330, 578 P.2d 296, 301, *quoting* Art. II, § 28, Mont. Const. " 'The enhanced punishment [does not constitute an] . . . additional penalty for crimes already committed . . . [, but rather, the] subsequent conviction is punished with greater severity by reason of the <u>incorrigible and dangerous character</u> demonstrated by the series of convictions.' " In re Bean's Petition (1961), 139 Mont. 625, 627, 365 P.2d 936, 937, *quoting* 25 Am.Jur. at 263 (emphasis added).

¶ Punishing recidivists more severely does not run afoul of double jeopardy because the enhanced punishment has a nonpunitive, remedial purpose. *See Mendoza-Martinez*, 372 U.S. at 168, 83 S.Ct. at 567, 9 L.Ed.2d at 661 (noting that the "traditional aims" of criminal punishment are "retribution and deterrence"). That is, it factors in the <u>criminal character</u> of the defendant, as evidenced by conduct for which he or she has been charged, tried, and convicted. However, unless we turn a blind eye to the presumption of innocence, pending charges cannot be analogized with a criminal conviction. Until such time as the state proves a charge beyond a reasonable doubt in front of a jury, with the defendant having a right to appeal the conviction, the conduct underlying the pending charges simply cannot be considered "criminal" under our system of justice.

¶ The question of whether a sentencing court may consider prior criminal convictions in sentencing is <u>not</u> before this Court. If it were, it would clearly present a different question from the issue which <u>is</u> before this Court--the consideration of charged, but unadjudicated conduct (i.e., conduct for which a criminal defendant is presumed innocent under our system of justice). When a case like the one *sub judice* comes before this Court, it illustrates the dangers of allowing the State to attempt to maximize the penalty for the offense of conviction based on unrelated, pending criminal charges. Here, Anderson is in jeopardy of effectively being punished twice for the same DUI offense.

¶ "The moral sentiment which double jeopardy exemplifies is the feeling that no man [or woman] should suffer twice for a single act." Sigler, *supra*, at 35. It is this moral

sentiment that haunts me in this case. Because I feel that the double jeopardy proscription against multiple punishments found in Article II, Section 25 of the Montana Constitution should be liberally construed according to its plain meaning-- an absolute prohibition against multiple punishments for the same offense--I respectfully dissent.

## II.

¶ Today, the majority uncritically adopts the *Witte* decision lock-stock-and-barrel. The adoption of *Witte* is not reasoned, nor does the majority provide any explanation for its adoption of *Witte* other than to say that "[t]he argument raised by Anderson has been rejected by the United States Supreme Court . . . ." The underlying rationale of *Witte* and its progeny in the federal courts, is the same notion that I opposed this Court adopting in State v. Zabawa (1996), 279 Mont. 307, 320, 928 P.2d 151, 159 (Leaphart, J., dissenting)--namely, the idea "that multiple punishments for the same offense are not prohibited by the Double Jeopardy Clause if that is what the legislature clearly intended." The precise holding of *Witte* tracks this notion: "We hold that, where the <u>legislature has authorized</u> such a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry." *Witte*, 515 U.S. at 403-04, 115 S.Ct. at 2208, 132 L.Ed.2d at 366 (emphasis added).

¶ However, "[t]he double jeopardy clause in Article II, Section 25, limits the power of all branches of the government, <u>including the legislature</u>." *Zabawa*, 279 Mont. at 326, 928 P.2d at 163 (Leaphart, J., dissenting). Thus, just like the U.S. Supreme Court decision of Missouri v. Hunter (1983), 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535, to which I vehemently dissented in *Zabawa*, the wholesale adoption of *Witte* perpetuates the faulty notion that Article II, Section 25 of the Montana Constitution, like the Fifth Amendment, merely prevents the sentencing court from prescribing greater punishment than the legislature intended. *See, e.g., Hunter*, 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d at 542. This is simply not true. So long as we do not afford less protection than the Federal Constitution in our interpretations of the Montana Constitution, this Court is not compelled to adopt U.S. Supreme Court decisions as "controlling authority."

¶ Not only is *Witte* not binding upon this Court, but it is distinguishable from the case at bar. Anderson points out that "[s]tarting down the path of reliance upon federal sentencing jurisprudence is a dangerous one" because the Federal Sentencing

Guidelines (the Guidelines) constitute "a very detailed and integrated sentencing scheme." I would agree. The Guidelines are a much more comprehensive sentencing scheme than we have in Montana, mandating consideration of sentencing factors that are only discretionary under Montana law.

¶ The majority summarily dismisses this laudable distinguishment made by Anderson--that *Witte* and its progeny are based on the unique statutory framework of the Guidelines--by calling this argument a "distinction without a difference." In *Witte*, the defendant argued that he should be sentenced in a single proceeding for all related offenses, whether charged or uncharged. He contended that consolidated sentencing was

No

**necessary to protect against the potential unfairness of receiving a substantially higher aggregate punishment due to multiple, overlapping prosecutions where the related charges serve to enhance each of the individual sentences imposed. However, the U. S. Supreme Court emphasized in Part III of the *Witte* opinion that the structure of the Guidelines themselves mitigate the potential for multiple or disproportionate total punishments:**

[Section] 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in such situations with an eye toward having such

> punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding). . . .

> Because the concept of relevant conduct under the Guidelines is reciprocal, § 5G1.3 operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence.

*Witte*, 515 U.S. at 404-05, 115 S.Ct. at 2208, 132 L.Ed.2d at 367; *see also* United States v. McCormick (1993), 992 F.2d 437, 442-43, *abrogated by Witte* (Mahoney, J., concurring in part and dissenting in part) (noting, in dissent, the same reciprocal, protective function of § 5G1.3 of the Guidelines).

¶ **These significant safeguards built into the Guidelines assured the U.S. Supreme Court that Witte's concerns over unfairness were not significant. I cannot find such solace in the discretionary sentencing scheme we have here in Montana. We have no analogue to the Guidelines that ensures that a criminal defendant receives parity in total sentencing on related offenses. Although I have a high degree of faith in the ability of our trial court judges to use their discretion wisely in sentencing, where that discretion transgresses the Montana Constitution, as here, it is this Court's duty to correct the constitutional violation. I would hold that where a pending criminal charge is clearly used to enhance a sentence imposed for a separate conviction, double jeopardy attaches to a subsequent prosecution on that criminal charge. To hold otherwise violates the multiple punishments protection of Article II, Section 25 of the Montana Constitution.**

¶ **The majority relies on the bare assertion that the Guidelines do not " 'change the constitutional analysis,' "** *Witte,* **515 U.S. at 401, 115 S.Ct. at 2207, 132 L.Ed.2d at 365, to dispose of Anderson's attempt to distinguish** *Witte.* **This conclusory explanation falls short of the facts in this case. The U.S. Supreme Court's statement was referring to the discretionary consideration of "uncharged conduct" by a pre-Guidelines court.** *See Witte***, 515 U.S. at 401, 115 S.Ct. at 2207, 132 L.Ed.2d at 365. Here, we have pending, <u>charged conduct</u> that was clearly used to enhance Anderson's sentence for the separate HTO conviction.**

¶ **Again, I do not object to the consideration, as the majority puts it, of a "defendant's prior criminal behavior"--at least to the extent that this "behavior" is evidenced by prior <u>criminal convictions</u>. I do object on double jeopardy grounds, however, to a**

**subsequent prosecution on a charge that was previously used to enhance the sentence for a separate conviction. The potential for unfairness is simply too salient to assuage my concerns. And I cannot find solace, as the *Witte* Court does, by placing responsibility for double jeopardy with the legislature's sentencing scheme. I dissent from the implied wholesale adoption of *Witte* as "controlling authority" for purposes of interpreting the Montana Constitution.**

/S/ W. WILLIAM LEAPHART

Justice William E. Hunt, Sr., joins in the foregoing dissent.

/S/ WILLIAM E. HUNT, SR.