JUSTICE RICE
delivered the Opinion of the Court.
*3 ¶1 A jury convicted Appellant Jason Lucas Garrymore of deliberate homicide on February 27, 2004. Thereafter, the Fourth Judicial District Court sentenced him to life imprisonment without the possibility of parole. Garrymore challenges the parole restriction and urges us to vacate his sentence. We affirm.
¶2 We consider the following issues on appeal:
¶3 (1) Does Garrymore’s failure to object to the District Court’s imposition of sentence preclude our review on appeal?
¶4 (2) Did the District Court’s imposition of the parole eligibility restriction pursuant to § 46-18-202(2), MCA (2001), violate Garrymore’s federal and state constitutional and statutory rights to jury trial and due process?
BACKGROUND
¶5 After an incident on January 2, 2003, left nearly two-year-old Tylin Garrymore dead, the State charged her father, Appellant Jason Lucas Garrymore (Garrymore), with deliberate homicide in violation of § 45-5-102, MCA (2001). Garrymore pleaded not guilty to the charge on February 4, 2003, and the case proceeded to trial by jury. The jury convicted Garrymore of deliberate homicide on February 27, 2004.
¶6 After completion of a pre-sentence report, Garrymore’s case proceeded to sentencing on May 6, 2004. At the hearing, both Garrymore and the State presented evidence of Garrymore’s past conduct and character, and each side argued for a different sentence. The State adopted the recommendation of Mr. Sonju, the probation/parole officer who had prepared the pre-sentence report. Relying on considerable evidence, Mr. Sonju concluded that Garrymore could not be rehabilitated, and recommended that Garrymore be given a life sentence without the possibility of parole. Conversely, Garrymore argued that he was never given an opportunity to properly rehabilitate, especially when his mental health issues were considered, and urged the court not to impose a parole eligibility restriction.
¶7 Notwithstanding Garrymore’s arguments to the contrary, the District Court adjudged Garrymore a violent offender and sentenced him to life imprisonment without the possibility of parole. The court provided the following basis for its decision:
Now, this defendant has three convictions for domestic abuse and unlawful restraint. He was arrested on the same type of charges in Utah and California but moved out of their jurisdiction so the charges were dismissed. In addition, he was on probation when this offense was committed.
*4 Now, throughout the trial and these proceedings, contrary to the testimony, I have not seen any remorse from this defendant. And I’m going to adopt some of Mr. Sonju’s reasons as my reasons. Mr. Sonju, quite candidly, said, I have been looking for all mitigating factors in this case. What is most disturbing is that I have been unable to find any.
Further, I agree with Mr. Sonju, especially after viewing the photographs, that I do not believe Tylin’s death was caused by a tragic culmination of accidents.
Though he may not have actively planned this death, his behavior, sadistic or otherwise, certainly caused it. He has a record of being mean and abusive to women.
As a result of his delay, the child died a violent, slow, painful death. She could have been taken to the hospital and possibly saved. He talked the mother out of that, and it appears that he would rather save his own neck from child abuse charges than save his two-year-old adopted daughter.
Finally, in our society, and I think we all realize it, even total strangers rush to assist a child in distress. But you, her adoptive father, chose to abuse and, from the pictures, torture this little girl and let her die.
So it’s now the judgment of this Court that you be sentenced to life imprisonment in the Montana State Prison without eligibility for parole.
(Emphasis added.) Garrymore did not object to the sentence at the time of its pronouncement by the District Court.
¶8 Garrymore appeals, asserting that the District Court imposed the parole eligibility restriction in violation of his federal and state constitutional and statutory rights.
STANDARD OF REVIEW
¶9 We review criminal sentences that include at least one year of actual incarceration to determine whether they are legal. State v. Herd, 2004 MT 85, ¶ 22, 320 Mont. 490, ¶ 22, 87 P.3d 1017, ¶ 22. “[A] sentence is not illegal when it is within the parameters provided by statute.” State v. Montoya, 1999 MT 180, ¶ 11, 295 Mont. 288, ¶ 11,983 P.2d 937, ¶ 11 (quoting State v. Gunderson, 282 Mont. 183, 187, 936 P.2d 804, 806, (1997) (overruled on other grounds)). We review questions of law de novo. Wadsworth v. State, 275 Mont. 287, 298, 911 P.2d 1165, 1171 (1996).
*5 DISCUSSION

Issue 1: Does Garrymore’s failure to object to the District Court’s imposition of sentence preclude our review on appeal?

¶10 Noting that “the defense did not assert a state or federal constitutional objection to the sentencing court’s statutory authority to restrict parole,” the State offers a brief argument that the merits of Garrymore’s claim should not be reviewed on appeal. The State acknowledges the exception to the contemporaneous objection rule we adopted for sentencing purposes in State v. Lenihan, 184 Mont. 338, 602 P.2d 997 (1979), but offers “three reasons why Lenihan jurisdiction should not be invoked.”[1]
¶11 Initially, we observe that the State’s “three reason” argument is very brief and is not supported by reference to any case from our Lenihan jurisprudence, but, rather, by citations, without analysis, to a state civil case and a federal case addressing the exercise of plain error review, a separate doctrine not at issue herein.[2] Therefore, a comprehensive response to the State’s Lenihan arguments is not necessary. The Lenihan rule states as follows:
It appears to be the better rule to allow an appellate court to review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing.
Lenihan, 184 Mont. at 343, 602 P.2d at 1000.
¶12 First, the State offers that Lenihan does not apply because “neither party recommended a deferred or suspended sentence in this case.” Although the Lenihan case involved the imposition of a deferred sentence, the rule we adopted therein was not limited to probationary sentences, and we have undertaken, pursuant to Lenihan, appellate *6 review of sentences which had no deferred or suspended portions. See State v. Honey, 2005 MT 107, ¶ 35, 327 Mont. 49, ¶ 35, 112 P.3d 983, ¶ 35, and State v. Stone, 2004 MT 151, ¶ 45, 321 Mont. 489, ¶ 45, 92 P.3d 1178, ¶ 45.
¶13 Secondly, noting that the parole ineligibility condition Garrymore challenges on appeal was raised during the sentencing hearing by the prosecution, the State contends that the Lenihan rule is inapplicable because an objection by Garrymore “would not have provoked judicial vindictiveness which Lenihan fears,” and that Garrymore’s appellate challenge is nothing more than an impermissible change of theories on appeal. Though judicial vindictiveness was a concern addressed in Lenihan, our holding therein was not limited to such circumstances, and we have since explained that the risk of judicial vindictiveness is only “part” of the rationale underpinning the Lenihan rule. See State v. Micklon, 2003 MT 45, ¶ 9, 314 Mont. 291, ¶ 9, 65 P.3d 559, ¶ 9. Further, the general rule governing a change of theories on appeal necessarily presupposes that a “theory” or argument was first advanced in the district court, a circumstance inherently inconsistent with Lenihan, which applies, in the sentencing context, when the defendant remains silent and offers no argument in the district court, and, thus, is an exception to the general rule. More importantly, however, it would ultimately undermine the efficacy of the sentencing process to reject appellate review of sentences where the defendant objected in the district court and changed his theory on appeal, yet allow appellate review of sentences where no objection is made, thereby creating an institutional incentive for defendants to remain silent during sentencing.
¶14 Thirdly, the State contends that Garrymore’s sentence “was not, as Garrymore now contends, unconstitutional.” We presume from this statement the State means that, because of the State’s confidence in the constitutionality of the sentence, Garrymore’s sentence cannot be “illegal” for purposes of applying the Lenihan rule. However, the Lenihan rule allows “an appellate court to review” certain sentences, on their substantive merits, which are “alleged” to be illegal, Lenihan, 184 Mont. at 343, 602 P.2d at 1000, and is not limited to those appeals in which the defendant prevails on the merits. Rather, the Lenihan rule is a procedural mechanism whereby appellate review of certain allegedly illegal sentences, which would be procedurally barred for lack of objection, may nonetheless be obtained. After undertaking appellate review of the sentence by way of the Lenihan rule, the Court then takes up the merits. See State v. Vernes, 2006 MT 32, ¶¶ 26-30, 331 *7 Mont. 129, ¶¶ 26-30, 130 P.3d 169, ¶¶ 26-30.
¶15 Lastly, the State suggests that, because Garrymore’s sentence is within statutory parameters, we “should refrain from invoking Lenihan to address a constitutional challenge to § 46-18-202(2),” citing only to United States v. Cotton, 535 U.S. 625, 122 S. Ct. 1781 (2002), which addressed plain error review, which, we again note, is a separate doctrine. The State offers no analysis from our Lenihan jurisprudence in support of its “statutory parameters” argument or why Lenihan should not apply to Garrymore’s particular constitutional challenge. Therefore, we decline to address the issue further.[3] We therefore undertake appellate review of the sentencing issue raised herein.

Issue 2: Did the District Court’s imposition of the parole eligibility restriction pursuant to § 46-18-202(2), MCA (2001), violate Garrymore’s federal and state constitutional and statutory rights to jury trial and due process?

¶16 Convicted of deliberate homicide pursuant to § 45-5-102(l)(a), MCA, Garrymore received a life sentence without the possibility of parole from the District Court. On appeal, Garrymore argues that the District Court’s imposition of the parole eligibility restriction was unconstitutional. Specifically, he argues that the parole eligibility restriction constitutes a sentence enhancement which was based on facts not found by a jury. Accordingly, Garrymore argues that the imposition of the parole eligibility restriction by the District Court violated his rights to trial by jury and due process guaranteed by both the Montana and United States Constitutions, as well as commensurate state statutory rights provided by § 46-1-401, MCA.

Federal Constitutional Claim

¶17 Garrymore’s federal constitutional claim is predicated on the United States Supreme Court’s decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), a case which focused on the interplay between sentence enhancement statutes, a sentencing *8 judge’s discretion, and the Sixth and Fourteenth Amendments to the United States Constitution. Apprendi and its progeny have impacted sentencing statutes, sentencing guidelines, and criminal sentences throughout the country, and according to Garrymore, lead to the inexorable conclusion that the District Court unconstitutionally imposed the parole eligibility restriction upon him.
¶18 In Apprendi, a defendant pled guilty in New Jersey state court to three offenses, one of which was possession of a firearm for an unlawful purpose. Apprendi, 530 U.S. at 469-70, 120 S. Ct. at 2352. Classified as a second-degree offense by New Jersey law, possession of a firearm for an unlawful purpose carried a penalty range of five to ten years. After a plea hearing at which the trial judge heard sufficient evidence to establish the defendant’s guilt on all three offenses, the court accepted the guilty plea.
¶19 However, the defendant in Apprendi did not receive a sentence between five and ten years, as authorized for second degree offenses in New Jersey. Rather, pursuant to a New Jersey hate crime enhancement statute, the trial judge found by a preponderance of the evidence that the defendant was motivated by racial bias, and as such, imposed an additional two years of incarceration. Apprendi, 530 U.S. at 471, 120 S. Ct. at 2352.
¶20 On appeal, the Supreme Court reversed, holding “it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.” Apprendi, 530 U.S. at 490, 120 S. Ct. at 2363. The Court formulated the following rule:
Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.
Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63. Applying the rule to the facts in Apprendi, the Court determined that New Jersey’s sentencing scheme was unconstitutional, because factfinding by the sentencing judge, not the jury, under the hate crime statute had increased the maximum punishment to which the defendant was exposed. Apprendi, 530 U.S. at 497, 120 S. Ct. at 2366-67. Therefore, the statutory scheme constituted a “departure from the jury tradition that is an indispensable part of our criminal justice system” and violated the Sixth Amendment. Apprendi, 530 U.S. at 497, 120 S. Ct. at 2366.
¶21 Though Apprendi demonstrated the Sixth Amendment’s *9 application to the sentencing process, an issue of practical importance remained; namely, what did “statutory maximum” mean for the purposes of Apprendi’s requirement that “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt”? Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63. This question was critical because any judicially imposed sentence which exceeded “the prescribed statutory maximum” was violative of a defendant’s rights under Apprendi.
¶22 Accordingly, the Supreme Court provided further clarification in Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002), and Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). In Ring, the Court considered Arizona’s capital sentencing statutes, which provided that a death sentence could not be imposed unless, following a sentencing hearing conducted by the trial judge, one aggravating circumstance was found by the judge. Ring, 536 U.S. at 597, 122 S. Ct. at 2437. In Blakely, the Court considered Washington’s determinate sentencing scheme, which provided a mandatory sentencing range for Blakely’s crime, and authorized a judge to impose a sentence above the range if he found “compelling reasons justifying an exceptional sentence.” Blakely, 542 U.S. at 299, 124 S. Ct. at 2535. In concluding that these sentencing statutes violated the holding in Apprendi, the Court explained that, “the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Blakely, 542 U.S. at 303, 124 S. Ct. at 2537. In other words:
[T]he relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.
Blakely, 542 U.S. at 303-04, 124 S. Ct. at 2537. A subtle distinction thus emerged: the “statutory maximum” is not the maximum possible sentence authorized by statute, but, rather, the maximum sentence for which a defendant is eligible “on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Blakely, 542 U.S. at 303, 124 S. Ct. at 2537.
¶23 Garrymore compares his cause to that of the defendant in Apprendi. Specifically, Garrymore characterizes the parole eligibility restriction as a sentence enhancement, and asserts that the parole eligibility restriction increased his penalty beyond the statutory maximum authorized by the jury verdict. Accordingly, we take up the Montana statutes at issue.
*10 ¶24 Conviction of the offense of deliberate homicide, § 45-5-102(l)(a), MCA, is punishable as follows:
(2) A person convicted of the offense of deliberate homicide shall be punished by death as provided in 46-18-301 through 46-18-310, unless the person is less than 18 years of age at the time of the commission of the offense, by life imprisonment, or by imprisonment in the state prison for a term of not less than 10 years or more than 100 years, except as provided in 46-18-219 and 46-18-222.
Section 45-5-102(2), MCA. Because the State did not seek the death penalty, and since neither § 46-18-219, MCA, nor § 46-18-222, MCA, is applicable to Garrymore’s case, the maximum sentence which could have been imposed upon Garrymore pursuant to the language of the statute was “life imprisonment.” However, Garrymore argues that the parole eligibility restriction, although plainly authorized by another statute (§ 46-18-202(2), MCA), operates to allow the imposition of a sentence which improperly exceeds the range authorized by § 45-5-102(2), MCA. He argues that the “life sentences” authorized by § 45-5-102(2), MCA, contain a presumption of parole eligibility which can be overcome only by additional factfinding pursuant to § 46-18-202(2), MCA, and that because such factfinding was not reflected by the jury’s verdict, but was conducted by the sentencing judge, the parole eligibility restriction violates the Sixth Amendment.
¶25 Section 46-18-202(2), MCA, which authorizes restrictions on parole eligibility, provides as follows:
Whenever the sentencing judge imposes a sentence of imprisonment in a state prison for a term exceeding 1 year, the sentencing judge may also impose the restriction that the offender is ineligible for parole and participation in the supervised release program while serving that term. If the restriction is to be imposed, the sentencing judge shall state the reasons for it in writing. If the sentencing judge finds that the restriction is necessary for the protection of society, the judge shall impose the restriction as part of the sentence and the judgment must contain a statement of the reasons for the restriction.
It is clear from the language of the statute that a sentencing judge, when imposing a prison term exceeding one year, may also impose a parole eligibility restriction in the judge’s sole discretion. This provision evidences a legislative intent to authorize, but not require, sentencing judges to restrict parole whenever they impose prison terms exceeding one year. Accordingly, it is evident that the parole *11 eligibility restriction imposed upon Garrymore fell within the statutory range for his offense. Indeed, we held in Cavanaugh v. Crist, 189 Mont. 274, 278, 615 P.2d 890, 893 (1980), that “[§ 46-18-202(2), MCA] does not permit district judges to add any time beyond the statutory maximum for the underlying offense,” thus establishing that the restriction falls within the statutory range of punishments for offenses exceeding one year in the state prison. However, Cavanaugh did not address the subtle distinction later advanced by Ring and Blakely, and discussed above: whether Garrymore was eligible to receive imposition of the parole eligibility restriction under § 46-18-202(2), MCA, based upon the facts reflected in the jury’s verdict.
¶26 It is for this reason Garrymore’s assertion that § 45-5-102(2), MCA, contains an implicit “presumption of parole eligibility” is critical to his argument. He seeks to demonstrate that under the penalty statute, standing alone and without the operation of § 46-18-202(2), MCA, he was entitled to a parole-eligible sentence (subject to the requirements of the parole statute, § 46-23-201, MCA), which was then taken away from him by the sentencing judge. However, we reject Garrymore’s argument that such a presumption exists.
¶27 We find no indicia in the sentencing statutes of a legislative intent to create a presumption in favor of parole eligibility which must be overcome in order for a sentencing judge to impose a parole restriction. The broad grant of discretionary authority-clearly indicated by the term “may also impose”-given to sentencing judges under § 46-18-202(2), MCA, to impose parole eligibility restrictions on the enormous class of sentences which exceed a one-year term of imprisonment bebes such an assertion. With regard to these sentences, no limitation has been placed upon the exercise of this grant of authority by the legislature. Thus, a parole-eligible sentence was not taken away from Garrymore because he was not entitled to such a sentence to begin with. There is no implicit presumption of parole eligibility.
¶28 Of course, we acknowledge that a parole eligibihty restriction must be accompanied by reasons stated in writing pursuant to § 46-18-202(2), MCA. We disagree, however, with Garrymore’s contention that the implicit fact-finding embodied within § 46-18-202(2), MCA, places the restriction beyond the “statutory maximum” for the purposes of Apprendi. We initially note that the Supreme Court has rejected the argument that “every fact with a bearing on sentencing must be found by a jury . . . .” Jones v. United States, 526 U.S. 227, 248, 119 S. Ct. 1215, 1226 (1999).
*12 ¶29 As the Supreme Court noted in Blakely and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), though the exercise of a judge’s discretion often necessitates findings of fact to support a particular sentence, a defendant does not necessarily have a right to have those facts found by a jury in all instances. Booker, 543 U.S. at 233, 125 S. Ct. at 750; Blakely, 542 U.S. at 309, 124 S. Ct. at 2540. Instead, where it is conferred by a legislature, a judge can exercise “broad discretion in imposing a sentence within a statutory range.” Booker, 543 U.S. at 233, 125 S. Ct. at 750. Thus, while a judge may not find facts which, once found, increase the defendant’s exposure to punishment, a judge may find facts to support the exercise of discretion in imposing a sentence which falls within the statutory maximum. As explained in Blakely:
[T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury’s traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.
Blakely, 542 U.S. at 308-09, 124 S. Ct. at 2540.
¶30 Applying this reasoning to Garrymore’s sentence demonstrates his argument is without merit. First, as noted above, a plain reading of the statutes evidences the legislature’s intent to make life imprisonment without the possibility of parole an authorized sentence for deliberate homicide. See §§ 45-5-102(2) and 46-18-202(2), MCA. Second, although § 46-18-202(2), MCA, requires written reasons to support imposition of parole eligibility restriction, those reasons need not go beyond those *13 facts found by the jury. Indeed, the factfinding requirement embodied in § 46-18-202(2), MCA, simply requires a judge to support his discretion with reasons, but does not tie the parole eligibility restriction to any particular facts or findings whatsoever. Instead, under the plain language of the statute, it is entirely possible for a judge to restrict parole based solely upon facts found by the jury.
¶31 Further, imposition of a parole restriction is not necessarily improper merely because the sentencing judge finds facts, to aid in the exercise of his discretion, not found by the jury. Here, the sentencing judge noted Garrymore’s prior convictions and his lack of remorse among the factors he considered in pronouncing sentence. Of course, as noted above, a prior conviction is a specific exception to the Apprendi rule, but, critical to this discussion, lack of remorse is an example of a fact “important to the exercise” of the sentencing discretion which does not “pertain to whether the defendant has a legal right to a lesser sentence ....” Blakely, 542 U.S. at 309, 124 S. Ct. at 2540. In other words, finding a “lack of remorse” does not trigger the imposition of the parole restriction under the statutes nor endue the District Court with additional statutory authority to impose the restriction. Imposition of the restriction remains within the sentencing judge’s discretion and a part of indeterminate sentencing. Thus, the “lack of remorse” finding was merely one which the sentencing judge found useful in guiding the exercise of his discretion, along with others.
¶32 Under Blakely, this sort of indeterminate sentencing scheme-i.e., leaving parole eligibility restrictions to the discretion of sentencing judges-is constitutional. Accordingly, and because § 46-18-202(2), MCA, does not remove from the jury a determination of facts necessary to restrict parole, we conclude that the statutory maximum punishment for the crime of deliberate homicide when the death penalty is not sought, for the purposes of Apprendi, is life imprisonment without the possibility of parole.
¶33 Faced with an almost identical issue, the Arizona Supreme Court came to the same conclusion. In State v. Fell, 115 P.3d 594, ¶¶ 8-19 (Ariz. 2005), the defendant argued, based on Apprendi, that a statutory sentencing scheme surrounding a deliberate homicide statute created a presumptive sentence of life with the possibility of parole, in part because the statute authorizing parole restrictions called for findings of fact. Fell, ¶¶ 13, 18. The court, however, rejected the defendant’s argument, and held that (a) there was no presumption of parole eligibility for deliberate homicide, and (b) because the legislature had *14 not required a sentencing court to find specific facts before restricting parole, the factfinding requirement did not increase the statutory maximum for Apprendi purposes. Fell, ¶¶ 14-18; see also Booker, 543 U.S. at 233, 125 S. Ct. at 750. As the court noted, “[a] statutory requirement that a judge make findings ... does not mean that any specific finding is necessary for imposition of the sentence.” Fell, ¶ 18.
¶34 Section 46-18-202(2), MCA, permits a sentencing judge to impose a parole eligibility restriction whenever the judge imposes a sentence that exceeds one year. Further, while a judge must state the reasons for the restriction if it is imposed, no particular finding of fact need be included among those reasons. For that reason, and because we conclude that the legislature intended the statutory maximum for § 45-5-102(l)(a), MCA, to be life imprisonment without the possibility of parole, we conclude that the District Court restriction of Garrymore’s parole eligibility did not violate Garrymore’s federal constitutional rights.

State Statutory Claim

¶35 Mirroring his federal constitutional claim above, Garrymore argues that the District Court’s restriction on his parole eligibility pursuant to § 46-18-202(2), MCA, violated his statutory rights under § 46-1-401, MCA (2001), a statute enacted in response to Apprendi. Again, we must disagree.
¶36 Section 46-1-401, MCA (2001), provides in pertinent part:
(1) A court may not impose an incarceration penalty enhancement specified in Title 45, Title 46, or any other provision of law unless:
(a) the enhancing act, omission, or fact was charged in the information, complaint, or indictment, with a reference to the statute or statutes containing the enhancing act, omission, or fact and the penalty for the enhancing act, omission, or fact;
(b) if the case was tried before a jury, the jury unanimously found in a separate finding that the enhancing act, omission, or fact occurred beyond a reasonable doubt; and
(2) The enhancement issue may be submitted to a jury on a form separate from the verdict form or may be separately stated on the verdict form. The jury must be instructed that it is to reach a verdict on the offense charged in the information, complaint, or indictment before the jury can consider whether the enhancing act, omission, or fact occurred.
*15 (3) An enhancing act, omission, or fact is an act, omission, or fact, whether stated in the statute defining the charged offense or stated in another statute, that is not included in the statutory definition of the elements of the charged offense and that allows or requires a sentencing court to add to, as provided by statute, an incarceration period provided by statute for the charged offense or to impose the death penalty instead of a statutory incarceration period provided by statute for the charged offense.
Codifying Apprendi, § 46-1-401, MCA, essentially requires a jury determination of the facts necessary to impose an additional sentence pursuant to a sentence enhancement statute. Because we see no substantive distinction between the principles enunciated in Apprendi and its progeny and this statutory rendering thereof, our disposition of Garrymore’s claim under the statute is also the same as our disposition of his federal constitutional claims.
¶37 As he did above, Garrymore argues that the application of § 46-18-202(2), MCA, “allowe[ed]” or “require[ed]” the District Court to add on to the sentence authorized by § 45-5-102(2), MCA. However, as mentioned previously, § 45-5-102(2), MCA, authorizes a district court to impose both life imprisonment and life imprisonment without the possibility of parole. Thus, § 46-18-202(2), MCA, does not, vis-á-vis an “act, omission, or fact,” allow or require a sentencing court to increase punishment for a charged offense. Accordingly, we conclude that the District Court’s sentence did not violate § 46-1-401, MCA.

State Constitutional Claim

¶38 Finally, Garrymore argues that the District Court violated his rights under Article II, Sections 24 and 26, of the Montana Constitution when it restricted his parole eligibility pursuant to § 46-18-202(2), MCA. Specifically, Garrymore argues that because the Montana Constitution is more protective of the right to jury trial than the United States Constitution, he should prevail on state constitutional grounds regardless of our disposition of his case under the federal constitution and Apprendi. Unfortunately, we find this argument too undeveloped to undertake a distinctive application of state constitutional principles.
¶39 Garrymore correctly notes that we have interpreted Article II, Sections 24 and 26 of the Montana Constitution as affording a greater jury trial right than does the Sixth Amendment to the United States Constitution. See Woirhaye v. Fourth Judicial Dist. Court, 1998 MT 320, 292 Mont. 185, 972 P.2d 800. However, Garrymore fails to offer a *16 compelling reason why the greater jury trial right in Montana dictates a different result in his case. Accordingly, we will not further consider the argument.
¶40 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES WARNER, LEAPHART and MORRIS concur.

 The State’s use of the term “Lenihan jurisdiction” echoes our own frequent misuse of the term. As a technical matter, a court cannot create its own jurisdiction. “Jurisdiction as applied to courts is the power or capacity given by law to a court to entertain, hear and determine the particular case or matter.” Peña v. State, 2004 MT 293, ¶ 21, 323 Mont. 347, ¶ 21, 100 P.3d 154, ¶ 21. This Court’s jurisdiction is granted by Article VII, Section 2, Montana Constitution. The Lenihan rule is a judicial creation whereby this Court accepts certain sentences for appellate review. The rule is not “jurisdictional” in the sense that the Court is with or without power to hear such claims. We recognize that terms such as “Lenihan jurisdiction” are commonly used to refer generally to a body of law or jurisprudence, but the better practice is to avoid such uses so that clarity of the actual meaning of “jurisdiction” can be promoted.

 See State v. Brister, 2002 MT 13, ¶ 17, 308 Mont. 154, ¶ 17, 41 P.3d 314, ¶ 17, which distinguished these two doctrines.

 We have decided a number of cases addressing or touching on the meaning of an “illegal” sentence for purposes of the Lenihan rule: see, for example, State v. Nelson, 274 Mont. 11, 906 P.2d 663 (1995); State v. Lafley, 1998 MT 21, 287 Mont. 276, 954 P.2d 1112; and State v. Legg, 2004 MT 26, 319 Mont. 362, 84 P.3d 648, but have not fully addressed the contours of the term. Further development of this issue, and reconciliation of inconsistencies in these and other cases, may he necessary. However, neither of the parties has cited to any of these cases or offered such argument, and we thus deem it inappropriate to undertake such issues until they have been properly raised and briefed.