DA 07-0364

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 142

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROBERT A. RICKMAN,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District,<br>In and For the County of Lewis and Clark, Cause No. ADC 06-328<br>Honorable Dorothy McCarter, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Joslyn M. Hunt, Assistant
            Appellate Defender; Helena, Montana

      For Appellee:

            Hon. Mike McGrath, Montana Attorney General; Tammy Plubell,
            Assistant Attorney General

            Leo Gallagher, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs: March 6, 2008

Decided: April 24, 2008

Filed:

_____
Clerk

District Court Judge Russell C. Fagg, sitting for Justice Jim Rice, delivered the Opinion of the Court.

¶1     Robert A. Rickman (Rickman) appeals from his sentence in the District Court for the First Judicial District, Lewis and Clark County, on charges of deliberate homicide under § 45-5-102(1)(b), MCA.  Rickman was sentenced to life in prison, with no parole eligibility for fifty-five (55) years.  We affirm.

¶2     We restate the issues on appeal as follows:

¶3     1.  Did Rickman's sentence violate the constitutional provisions against cruel and unusual punishment?

¶4     2.  Did the District Court err by relying on retribution as a factor for Rickman's sentence?

¶5     3.  Did the District Court err by imposing a restriction on Rickman's parole eligibility for fifty-five (55) years?

### FACTUAL AND PROCEDURAL BACKGROUND

¶6     On the evening of December 8, 2006, Rickman and Travis Kirkbride (Kirkbride) drove around Helena, Montana, looking for someone to rob.  The two wanted money to purchase marijuana.  When they saw the victim, Paul Raftery (Raftery), walking up Lawrence Street, they exited the vehicle and began following him.  Raftery noticed they were following him and crossed the street.  Rickman approached Raftery and punched him in the face.  Raftery yelled for help and attempted to get away, at which point Kirkbride stabbed him in the back with a large hunting knife.  Raftery again attempted to get away.  This time Rickman tripped him.  While Raftery was on the ground bleeding, Rickman took Raftery's

2

wallet. Rickman and Kirkbride returned to their vehicle and fled.

¶7 After Rickman and Kirkbride discovered there was nothing of value in Raftery's wallet, they dumped the wallet, the bloody knife, and some bloody clothing in a dumpster. Meanwhile, two citizens heard Raftery's cries for help and called 911. Emergency responders found Raftery unresponsive and bleeding from his back. He was transported to St. Peter's Hospital, but died en route.

¶8 Kirkbride was arrested on December 11, 2006. He confessed to killing Raftery, and confirmed Rickman's involvement. Rickman was charged on December 29, 2006, with deliberate homicide under § 45-5-102(1)(b), MCA (commonly known as felony murder). On February 14, 2007, Rickman filed an Acknowledgement of Waiver of Rights and pled guilty to deliberate homicide.

¶9 The District Court held a sentencing hearing on April 19, 2007. At the conclusion of the sentencing hearing, the court sentenced Rickman to life in prison with no parole eligibility for fifty-five (55) years, with 128 days of credit for time served. Rickman now appeals.

¶10 Additional facts will be discussed where relevant.

## DISCUSSION

## STANDARD OF REVIEW

¶11 "[The Court] review[s] criminal sentences that include at least one year of incarceration for legality only." *State v. Rosling*, 2008 MT 62, ¶ 59, 342 Mont. 1, ¶ 59, ___ P.3d ___, ¶ 59. "Our review is confined to determining whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters

set by the applicable sentencing statutes, and whether the court adhered to the affirmative mandates of the applicable sentencing statutes." *Rosling*, ¶ 59 (*citing State v. Ariegwe*, 2007 MT 204, ¶ 174, 338 Mont. 442, ¶ 174, 167 P.3d 815, ¶ 174). "This determination is a question of law and, as such, our review is de novo." *Ariegwe*, ¶ 175. "Trial judges are granted broad discretion to determine the appropriate punishment for offenses." *State v. Erickson*, 2008 MT 50, ¶ 10, 341 Mont. 426, ¶ 10, 177 P.3d 1043, ¶ 10. "On appeal we will not review a sentence for mere inequity or disparity." *Erickson*, ¶ 10.

¶12 **Issue 1. Did Rickman's sentence violate the constitutional provisions against cruel and unusual punishment?**

¶13 Rickman contends his sentence constitutes cruel and unusual punishment which violates both the Eighth Amendment to the United States Constitution and Article II, Section 22 of the Montana Constitution. Rickman asserts his sentence is disproportionate to that of Kirkbride, who received the same sentence. Rickman claims because he did not stab Raftery, he is not as culpable.

¶14 In addition, Rickman contends the disproportionate sentence is even more apparent upon review of other life sentences received for felony murder in the past ten years. He notes that none of the crimes where a life sentence was given to a defendant twenty-three years old or younger, involved a crime committed by two or more persons—all of them acted alone.

¶15 While neither the Eighth Amendment to the United States Constitution, nor Article II, Section 22 of the Montana Constitution, contains explicit prohibitions against disproportionate sentences, the United States Supreme Court has held that the cruel and

4

unusual punishment clause of the Eighth Amendment bans sentences that are grossly disproportionate to the crime for which the defendant is convicted. *See Harmelin v. Michigan*, 501 U.S. 957, 994, 111 S. Ct. 2680, 2701 (1991). The general rule in Montana is that a sentence that is within the statutory maximum guidelines does not violate the prohibition against cruel and unusual punishment. *State v. Shults*, 2006 MT 100, ¶ 30, 332 Mont. 130, ¶ 30, 136 P.3d 507, ¶ 30. Rickman's sentence is within the maximum provided by the statutory guidelines. This Court has recognized an exception to the general rule "when a sentence is so disproportionate to the crime that it shocks the conscience and outrages the moral sense of the community or of justice." *Shults*, ¶ 30 (*citing State v. Wardell*, 2005 MT 252, ¶ 28, 329 Mont. 9, ¶ 28, 122 P.3d 443, ¶ 28). The defendant bears the burden of proving his sentence falls within this exception. *State v. Tadewaldt*, 277 Mont. 261, 271, 922 P.2d 463, 469 (1996). Rickman contends he has met this burden.

¶16    Rickman invites the Court to use *Vernon Kills on Top v. State*, 279 Mont. 384, 928 P.2d 182 (1996), for guidance in determining proportionality. *Kills on Top* is a death penalty case, which requires this Court to engage in a detailed proportionality analysis. *Kills on Top*, 279 Mont. at 412, 418-20, 928 P.2d at 200, 203-05. In non-death penalty cases, the Court has left detailed proportionality analysis to the Sentence Review Board. *Shults*, ¶ 32; *Wardell*, ¶ 29; *State v. Kern*, 2003 MT 77, ¶ 54, 315 Mont. 22, ¶ 54, 67 P.3d 272, ¶ 54; *State v. DeSalvo*, 273 Mont. 343, 350, 903 P.2d 202, 207 (1995). In the instant case, the Court adheres to prior precedent and leaves detailed proportionality analysis to the Sentence Review Board. The Court only examines proportionality in order to determine if Rickman's sentence "shocks the conscience," thereby falling within the exception to the general rule

regarding constitutionality.

¶17 "The nature of crimes committed by [the] defendant is a weighty factor in [determining if a sentence shocks the conscience]." *State v. Bruns*, 213 Mont. 372, 377, 691 P.2d 817, 820 (1984). In the instant case, Rickman pled guilty to deliberate homicide. Essentially, Kirkbride and Rickman were seeking to rob a stranger for drug money. They saw Raftery and decided he would be the stranger robbed. Not content with merely robbing Raftery, as the District Court noted, "Kirkbride stabbed [him] in the back with a huge knife." Raftery was an innocent victim who was left to die by Rickman and Kirkbride. The District Court concluded the random nature of the crime makes it even worse because the citizens of Helena felt much less safe walking their streets after the crime.

¶18 Rickman argues it was Kirkbride, not he, who fatally stabbed Raftery; yet, Rickman and Kirkbride received identical sentences. Therefore, Rickman contends the sentences are disproportionate. However, it was Rickman who called out to Raftery when Raftery was first approached, and it was Rickman who punched him. Furthermore, Rickman tripped Raftery after Kirkbride stabbed Raftery. The sentencing transcript shows Rickman knew Kirkbride carried knives, including a knife that was at least eight inches long and hidden in Kirkbride's coat. Rickman told a detective Kirkbride was "always carrying fucking knives." Lastly, Rickman encouraged Kirkbride to bring the knife to the robbery. The nature of the crime indicates Rickman's sentence is not so disproportionate as to shock the conscience.

¶19 The likelihood of the defendant to reoffend is another factor in the calculation to determine if a sentence shocks the conscience. *State v. Webb*, 2005 MT 5, ¶¶ 33-34, 325 Mont. 317, ¶¶ 33-34, 106 P.3d 521, ¶¶ 33-34. By the age of 12, Rickman had been

6

introduced to the juvenile justice system. By the age of 18, Rickman had been adjudicated a juvenile delinquent and committed to Pine Hills, a juvenile correctional facility, on three separate occasions. The events of December 8, 2006, indicate none of these stays helped Rickman turn his life around. Moreover, Dr. Dean Gregg, Rickman's expert, believed, "Rickman had a higher than average risk for violent recidivism." The Court acknowledges this is a statistical assessment, not a certainty, and only predicts Rickman's future behavior. However, given the statistical assessment, Rickman's poor track record at Pine Hills, and the horrific and random nature of the crime, combined with Rickman's role in it all, Rickman's sentence does not shock the conscience. Rickman's sentence does not violate the prohibition against cruel and unusual punishment.

¶20 The Court acknowledges the chart prepared by Rickman that details all sentences for deliberate homicide handed down in the past ten years to defendants under twenty-three years old. Rickman is free to take the chart to the Sentence Review Division, the proper place for a detailed proportionality analysis.

¶21 *Issue 2. Did the District Court err by relying on retribution as a factor for Rickman's sentence?*

¶22 Rickman contends the District Court improperly considered "retribution" as a factor in his sentence. The word "retribution" is not contained in the Montana correctional and sentencing policies found at §§ 46-18-101(2) and 46-18-101(3), MCA. In addition, Rickman contends the District Court improperly considered who the victim was as a person. While not specifically stated in Rickman's briefs, Raftery was a Montana attorney and Montana Supreme Court law clerk. It appears that without actually arguing it, Rickman believes

Raftery's position in the legal community affected his sentence. Rickman asserts he should not be sentenced based on who the victim was, as this is not found in the correctional and sentencing policies.

**The District Court used the mandated statutes correctly**

¶23 Rickman correctly notes that the word "retribution" is not among the sentencing policies articulated in § 46-18-101(2), MCA, or the sentencing principles articulated in § 46-18-101(3), MCA. However, § 46-18-101(2), MCA, states Montana's sentencing policy is to:

> (a) punish each offender commensurate with the nature and degree of harm caused by the offense and to hold an offender accountable;
> (b) protect the public, reduce crime, and increase the public sense of safety by incarcerating violent offenders and serious repeat offenders;
> (c) provide restitution, reparation, and restoration to the victim of the offense[.]

Pursuant to § 46-18-101(2)(a), MCA, it is certainly appropriate for the District Court to consider Raftery was merely an innocent victim in the wrong place, at the wrong time. Pursuant to § 46-18-101(2)(c), MCA, it was equally appropriate to consider the impact on Raftery's family.

¶24 Further, § 46-18-115(4), MCA, allows the District Court to consider the statements made by Raftery's family. Section 46-18-115(4), MCA, provides:

> (a) The court shall permit the victim to present a statement concerning the effects of the crime on the victim, the circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion regarding appropriate sentence. At the victim's option, the victim may present the statement in writing before the sentencing hearing or orally under oath at the sentencing hearing, or both.
> (b) The court shall give copies of any written statements of the victim to the prosecutor and the defendant prior to imposing sentence.
> (c) The court shall consider the victim's statement along with other factors. However, if the victim's statement includes new material facts upon which the court intends to rely, the court shall allow the defendant adequate

8

opportunity to respond and may continue the sentencing hearing if necessary. The District Court was free to consider the statements made by Raftery's family, as well as the information contained in the pre-sentence investigation report (PSI). Section 46-18-112(1)(e), MCA, mandates that the content of the PSI must include a report of "the harm caused, as a result of the offense, to the victim, the victim's immediate family, and the community." Contained in the PSI is information regarding Raftery's position in the legal community. However, in the "Evaluation/Recommendation" portion of the PSI, the reasons given for the sentencing recommendation do not mention who the victim was as a person, but rather focus on the crime itself and Rickman's criminal history. The District Court considered the family statements and the PSI, all of which is allowable by law.

**Montana Courts have treated retribution as a component of punishment**

¶25 This Court has repeatedly said retribution is a component of punishment. For example, "[a] sentence of imprisonment following a criminal conviction is imposed because a particular crime was committed, and its purpose is both retributional and rehabilitational." *Matter of C.S.*, 210 Mont. 144, 146, 687 P.2d 57, 59 (1984). We restated this declaration of purpose in 1993. *Matter of B.L.T.*, 258 Mont. 468, 473, 853 P.2d 1226, 1229 (1993).

¶26 *Matter of B.L.T.* and *Matter of C.S.* are not the only cases in Montana that establish retribution as a part of punishment. "A civil sanction will be deemed . . . punishment in the constitutional sense only if the sanction may not be fairly characterized as remedial but only as a deterrent or retribution." *Frazier v. Montana State Dept. of Corrects.*, 277 Mont. 82, 86, 920 P.2d 93, 96 (1996) (*quoting Bae v. Shalala*, 44 F.3d 489, 493 (7th Cir. 1995) (internal quotation marks omitted)). "[A] civil penalty is 'punishment' . . . if it 'cannot fairly be said

9

to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes.'" *State v. Nelson*, 275 Mont. 86, 91, 910 P.2d 247, 250 (1996) (*quoting United States v. Halper*, 490 U.S. 435, 448, 109 S. Ct. 1892, 1901-02 (1989)). *See also State v. Mount*, 2003 Mont. 275, ¶¶ 70, 73, 317 Mont. 481, ¶¶ 70, 73, 78 P.3d 829, ¶¶ 70, 73.

¶27 Lastly, the judgment and commitment of the sentencing judge shows retribution was only the third basis for the sentence. Other factors were "the defendant's potential for rehabilitation appears to be minimal" and "the defendant poses a significant threat to the public." The District Court's use of the word "retribution" aligns with the sentencing policies and procedures in Montana.

¶28 ***Issue 3. Did the District Court err by imposing a restriction on Rickman's parole eligibility for fifty-five (55) years?***

¶29 Rickman contends the District Court erred by imposing a restriction on his parole eligibility. According to Rickman, § 46-18-202(2), MCA, does not give a sentencing court the authority to restrict a defendant's parole eligibility. In essence, Rickman argues he is either parole eligible or he is not.

¶30 Recently, the Court described the task of statutory interpretation as "simply to ascertain and declare what is in terms or substance contained in the statute, not to insert what is omitted or to omit what has been inserted." *State v. Ashmore*, 2008 MT 14, ¶ 12, 341 Mont. 131, ¶ 12, 176 P.3d 1022, ¶ 12 (*quoting* § 1-2-101, MCA) (internal brackets omitted). Section 46-18-202(2), MCA, states in pertinent part, "the sentencing judge may also impose the restriction that the offender is ineligible for parole." Rickman argues the phrase "is

10

ineligible for parole" only allows the sentencing judge to restrict parole for all of a sentence or none of it. The Court disagrees.

¶31 The Court has, on prior occasion, examined other parts of Title 46, Chapter 18 in order to determine the meaning of § 46-18-202(2), MCA. *Gratzer v. Mahoney*, 2006 MT 282, ¶¶ 4-7, 334 Mont. 297, ¶¶ 4-7, 150 P.3d 343, ¶¶ 4-7 (*examining* § 46-23-103(4), MCA (1981), and § 46-23-1001(3), MCA (1981), in order to determine the meaning of "term" contained in § 46-18-202(2), MCA). Section 46-18-202(2), MCA, is not the only provision of Title 46, Chapter 18 dealing with the restrictions sentencing judges may put on sentences. For example, directly preceding § 46-18-202(2), MCA, is § 46-18-202(1)(f), MCA, which empowers trial court judges to attach to sentences, "any other limitation reasonably related to the objectives of rehabilitation and protection of the victim and society." It is implausible to interpret § 46-18-202(2), MCA, as imposing an all or nothing limitation on parole restrictions based on the phrase "is ineligible for parole" when the prior section gives the judge great discretion that is limited only by reasonableness.

¶32 In addition, this Court has affirmed sentences which contained a parole restriction as early as 1988. *State v. Wirtala*, 231 Mont. 264, 752 P.2d 177 (1988), *overruled on other grounds*, *State v. Lane*, 1998 MT 76, ¶ 41, 288 Mont. 286, ¶ 41, 957 P.2d 9, ¶ 41. Rickman correctly argues *Wirtala* did not address the lawfulness of partial parole restrictions. However, the sentence in *Wirtala* was upheld and, importantly, the sentence contained a partial parole restriction. *Wirtala*, 231 Mont. at 269, 752 P.2d at 180. The Court has addressed parole restrictions in other cases. In *State v. Thomas*, the Court concluded the guilty plea was reasonable, deeming the partial parole restriction imposed under § 46-18-

202(2), MCA, a "discretionary parole restriction." *State v. Thomas*, 285 Mont. 112, 121-23, 946 P.2d 140, 145-47 (1997). It is implausible to interpret "a discretionary parole restriction" as allowing only enough discretion to hand down an all or nothing parole restriction.

¶33 Moreover, giving the trial court judge discretion is one of Montana's sentencing policies. *See* § 46-18-101(3)(d), MCA ("[s]entencing practices must permit judicial discretion to consider aggravating and mitigating circumstances"). This Court is unwilling to allow the phrase "ineligible for parole" to limit sentencing judges to all or nothing parole restrictions. If a sentencing court can impose a restriction of no parole eligibility, then a sentencing court can certainly impose a restriction of limited parole eligibility.

¶34 The passage of time and the actions, or more appropriately inactions, of Montana's legislature provide a final reason to hold partial parole restrictions lawful. Montana sentences containing partial parole restrictions have been upheld against other challenges at least since 1988. *See Wirtala*, 231 Mont. at 269, 752 P.2d at 180. Montana's legislature has convened every two years since. The legislature is presumed to know how this Court has interpreted its statutes. *Sampson v. Nat'l Farmers Union Prop. & Cas. Co.*, 2006 MT 241, ¶ 20, 333 Mont. 541, ¶ 20, 144 P.3d 797, ¶ 20. Therefore, if the Montana legislature disapproved of partial parole restrictions, it would have changed the text of § 46-18-202(2), MCA, in order to ban such partial restrictions. Since the text of § 46-18-202(2), MCA, is unchanged, this Court presumes the legislature approves of partial parole restrictions. Therefore, this Court holds partial parole restrictions do not offend § 46-18-202(2), MCA. Rickman's sentence, including the parole restriction, is lawful.

**CONCLUSION**

¶35 The District Court did not violate the constitutional provisions against cruel and unusual punishment in sentencing Rickman to the same sentence as Kirkbride. The District Court did not err when it used "retribution" as a factor in Rickman's sentence. Finally, the parole eligibility restriction on Rickman's sentence is legal.

¶36 Affirmed.

/S/ RUSSELL C. FAGG
District Court Judge Russell C. Fagg
sitting for Justice Jim Rice

We concur:


/S/ SUSAN P. WATTERS
District Court Judge Susan P. Watters
sitting for Chief Justice Karla M. Gray


/S/ INGRID GUSTAFSON
District Court Judge Ingrid Gustafson
sitting for Justice Patricia Cotter


/S/ GREGORY R. TODD
District Court Judge Gregory R. Todd
sitting for Justice W. William Leaphart


/S/ G. TODD BAUGH
District Court Judge G. Todd Baugh
sitting for Justice Jim Nelson