DA 11-0395

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 180

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DANIEL JOHN PAULSRUD,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and For the County of Chouteau, Cause No. DC 10-08
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      William F. Hooks; Hooks & Wright, P.C.; Helena, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General; Jonathan M. Krauss, Assistant
Attorney General; Helena, Montana

      Brant Light, Assistant Attorney General, Special Deputy County Attorney;
Stephen Gannon, Chouteau County Attorney; Fort Benton, Montana

Submitted on Briefs:  June 6, 2012

Decided:  August 21, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 A jury convicted Daniel John Paulsrud (Paulsrud) of deliberate homicide with a dangerous weapon on March 16, 2011. The Twelfth Judicial District Court, Chouteau County, sentenced Paulsrud to 110 years in the Montana State Prison without the possibility of parole. Paulsrud challenges the parole restriction, requesting that his sentence be vacated. We affirm.

¶2 We consider the following issues on appeal:

¶3 *1. Did the District Court impose an illegal sentence by restricting the Defendant's eligibility for parole?*

¶4 *2. Does a life sentence without parole based on the nature of the crime constitute cruel and unusual punishment?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 The Chouteau County Attorney charged Paulsrud with deliberate homicide with a dangerous weapon for the death of his girlfriend Leslie Davidson in an incident that took place on Thanksgiving Day, November 26, 2009. Paulsrud and Davidson had a turbulent six-year relationship in which Paulsrud threatened to kill Davidson and himself in a murder-suicide patterned after Davidson's biological parents' deaths. Davidson attempted to get out of the relationship several times because Paulsrud was physically abusive and controlling, traits that were triggered when he drank excessively.

2

¶6    After receiving a call from a citizen, Fort Benton Police Chief John Turner found Paulsrud on his hands and knees on the street outside the apartment complex where he was living. Paulsrud had a self-inflicted gunshot wound to his face and jaw and could not talk. He pantomimed shooting himself under the chin and likewise indicated he had shot another person who was still inside the building. Turner found Davidson's lifeless body inside the apartment with a bullet wound to the chest. Davidson still had her glasses on and her hands in her pockets. Evidence at trial revealed that Paulsrud shot Davidson with a .357 revolver. A jury convicted Paulsrud of deliberate homicide by use of a firearm.

¶7    At sentencing, the State recommended that Paulsrud be sentenced to 100 years in the Montana State Prison for deliberate homicide, plus 10 years for the use of a dangerous weapon, to run consecutively, and that Paulsrud's parole eligibility be restricted. Paulsrud argued against the parole restriction, recommending a sentence of 70 years, plus 10 years for the weapons enhancement, with 20 years suspended. Before imposing the sentence, the District Court reflected that there was no clear reason Paulsrud couldn't be rehabilitated, but that his conduct had been "egregious" with "no justification, whatsoever" and no mitigating circumstance. "You used a larger caliber handgun and purposely or knowingly pointed it at her. And without warning or provocation, you literally blew her away, needlessly and reprehensibly, snuffing out her life." Pronouncing the sentence, the court found that it was:

> necessary, appropriate, and just to hold you accountable for the horrendous crime that you've committed here. And I think that that is the overriding consideration for the Court and dispositive consideration for the Court, in light of the offensive and reprehensible nature of your conduct, and the

3

irreparable and great nature of harm that you caused to this victim and to her family and friends.

Based thereon, the District Court sentenced Paulsrud to life in prison, without parole or conditional release eligibility, for the offense of deliberate homicide, and an additional 10 year term for the weapons enhancement in violation of § 46-18-221(1), MCA (2009). In its written judgment, the District Court reiterated:

> [A] life sentence without parole or release eligibility is necessary and just to hold Defendant fully and sufficiently accountable commensurate with the degree of reprehensibility of his horrendous criminal act in light of the complete absence of any mitigating or other extenuating circumstance and ultimately commensurate with the fatal irreparable harm caused to the victim and her family and friends.

¶8 Paulsrud appeals the imposition of the restriction upon his parole eligibility.

## STANDARD OF REVIEW

¶9 "We review criminal sentences that include at least one year of actual incarceration to determine whether they are legal." *State v. Garrymore*, 2006 MT 245, ¶ 9, 334 Mont. 1, 145 P.3d 946. A sentence is not illegal when it is within the statutory parameters. *Garrymore*, ¶ 9. "We review questions of law *de novo*." *Garrymore*, ¶ 9.

## DISCUSSION

¶10 *1. Did the District Court impose an illegal sentence by restricting the Defendant's eligibility for parole?*

¶11 The statutory penalties for deliberate homicide include death, life imprisonment, or imprisonment in the state prison for a term not less than 10 years or more than 100 years. Section 45-5-102(2), MCA. For sentences exceeding one year, the court may also restrict the defendant's eligibility for parole:

4

> Whenever the sentencing judge imposes a sentence of imprisonment in a state prison for a term exceeding 1 year, the sentencing judge may also impose the restriction that the offender is ineligible for parole and participation in the supervised release program while serving that term. If the restriction is to be imposed, the sentencing judge shall state the reasons for it in writing. If the sentencing judge finds that the restriction is necessary for the protection of society, the judge shall impose the restriction as part of the sentence and the judgment must contain a statement of the reasons for the restriction.

Section 46-18-202(2), MCA. The statutory maximum punishment for deliberate homicide, under §§ 45-5-102(2) and 46-18-202(2), MCA, is life imprisonment without parole, when the death penalty is not a consideration. *Garrymore*, ¶ 32. Sentencing judges are granted broad discretion to restrict parole eligibility on sentences of imprisonment that exceed one year. *State v. Rosling*, 2008 MT 62, ¶ 70, 342 Mont. 1, 180 P.3d 1102 (citing *Garrymore*, ¶ 27).

¶12 Paulsrud argues that because the District Court did not conclusively find that he could not be rehabilitated or was a danger to society, the restriction on his parole eligibility violates statute and prior case law. He quotes our statement in *Cavanaugh v. Crist*, 189 Mont. 274, 282, 615 P.2d 890, 895 (1980) (superceded by statute on other grounds), that the "sole purpose [of the parole restriction statute] is to permit a district judge, in the course of ordinary sentencing, to determine that a defendant should serve his full sentence *for the protection of society*" (emphasis added).

¶13 Paulsrud is correct in stating that a sentencing judge may impose a parole eligibility restriction when the defendant poses a danger to society, but he misconstrues the statute when asserting a parole eligibility restriction may be imposed *only* when it is

necessary for the protection of society. The second sentence of § 46-18-202(2), MCA, states that "[i]f the restriction is to be imposed, the sentencing judge shall state the reasons for it in writing," referencing "the reasons" in broad, unspecified terms. The third sentence heightens the necessity of imposing a restriction when the protection of society is at issue, but it does not limit the imposition of the restriction to such cases.

¶14    The language that Paulsrud quotes from *Cavanaugh* was part of our rationale for rejecting Cavanaugh's constitutional vagueness challenge to the statute. *Cavanaugh*, 189 Mont. at 282; 615 P.2d at 895. Distinguishing precedent which Cavanaugh had offered for the proposition that an *offense* must be sufficiently defined, we explained that § 46-18-202(2), MCA, "does not define an offense. . . . nor does it forbid or require the doing of an act. Its sole purpose is to permit a district judge, in the course of ordinary sentencing, to determine that a defendant should serve his full sentence for the protection of society." *Cavanaugh*, 189 Mont. at 282, 615 P.2d at 895. Our point was that the statute did not need to be more specific to satisfy vagueness concerns, because it did not define an offense. The issue in *Cavanaugh* was not the statutory parameters for imposition of the restriction.

¶15    Indeed, "this Court has never set forth a litmus test that must be met before the District Court may impose parole eligibility restrictions. We have never held that parole can be denied only in cases where the defendant poses a danger to society or where the defendant lacks remorse. Instead, we have left that decision to the court's broad

discretion based upon all the relevant facts." *State v. Christianson*, 1999 MT 156, ¶ 38, 295 Mont. 100, 983 P.2d 909.

¶16 While retribution alone is not the dominant objective of sentencing, *see generally Williams v. New York*, 337 U.S. 241, 248, 69 S. Ct. 1079, 1083 (1949), the sentencing court may properly consider retribution as a factor during sentencing. *State v. Rickman*, 2008 MT 142, ¶ 25, 343 Mont. 120, 183 P.3d 49. Additionally, the sentencing court may consider "any evidence relevant to a defendant's sentence, including evidence relating to the crime, the defendant's character, background history, mental and physical condition, and any other evidence the court considers to have probative force." *Rosling*, ¶ 72. We have previously held that the heinous nature of the crime is sufficient reason for imposing the restriction on parole. *Christianson*, ¶ 40; *State v. Heit*, 242 Mont. 488, 494, 791 P.2d 1379, 1383-84 (1990). When the record supports the District Court's determination to impose a parole eligibility restriction, this Court will not substitute its judgment. *Christianson*, ¶ 39.

¶17 Here, the District Court had broad discretion to impose a parole eligibility restriction on Paulsrud's sentence of imprisonment. Exceptions that would have narrowed the District Court's sentencing discretion, e.g., §§ 45-5-102, 46-18-219, and 46-18-222, MCA, did not apply. The District Court's findings complied with the requirements of § 46-18-202(2), MCA, and it stated the reasons for the restriction both in open court and in its written judgment. The District Court found that evidence of the horrendous nature of the crime committed on the victim and the effects on the victim's

family and friends warranted the restriction on parole eligibility, both of which have probative force and relate to the crime. The District Court's findings were adequately supported by the record and complied with all statutory requirements.

¶18    *2. Does a life sentence without parole based on the nature of the crime constitute cruel and unusual punishment?*

¶19    Generally, a sentence which falls within the maximum statutory guidelines does not violate the prohibition against cruel and unusual punishment in Article II, Section 22 of the Montana Constitution. *State v. Webb*, 2000 MT 5, ¶¶ 31-34, 325 Mont. 317, 106 P.3d 521.[1]   However, we have recognized an exception to this general rule "when a sentence is so disproportionate to the crime that it shocks the conscience and outrages the moral sense of the community or of justice." *State v. Shults*, 2006 MT 100, ¶ 30, 332 Mont. 130, 136 P.3d 507.

¶20    Because questions of equity in sentencing are generally reviewed by the Sentencing Review Board, we review proportionality only to determine whether the sentence falls into the exception and "shocks the conscience." *Rickman*, ¶ 16.[2]   The defendant bears the burden of proving by a preponderance of the evidence that his sentence falls within this exception. *Rickman*, ¶ 15; *In re Jones*, 176 Mont. 412, 420, 578 P.2d 1150, 1154 (1978).

---

[1] Paulsrud cites to federal authority as well. Generally, a sentence within the maximum statutory guidelines does not violate the Eighth Amendment prohibition against cruel and unusual punishment. *State v. Watson*, 211 Mont. 401, 421, 686 P.2d 879, 889 (1984); *Harmelin v. Michigan*, 501 U.S. 957, 993, 111 S. Ct. 2680, 2700 (1991).

[2] If an offender is ineligible for sentence review, we will review the sentence for abuse of discretion. *State v. Herd*, 2004 MT 85, ¶ 22, 320 Mont. 490, 87 P.3d 1017.

¶21 In determining whether a sentence "shocks the conscience," this Court has examined evidence of the nature of the crime, *State v. Bruns*, 213 Mont. 372, 377, 691 P.2d 817, 820 (1984), the likelihood of the defendant to reoffend, *Rickman*, ¶ 19, the likelihood of the defendant to be rehabilitated, *Webb*, ¶ 33, among other considerations. The nature of the crime is "a weighty factor in this analysis." *Bruns*, 213 Mont. at 377, 691 P.2d at 820.

¶22 Here, Paulsrud's sentence is within the maximum statutory guidelines for deliberate homicide. We conclude that Paulsrud has not met the burden of demonstrating that his sentence shocks the conscience and outrages the moral sense of the community or of justice. Paulsrud's briefing acknowledges that "the brutal nature and the severity of Ms. Davidson's death are indisputable." The jury found that Paulsrud deliberately shot and killed a defenseless person with a powerful handgun, and the senselessness and brutality of the crime were noted by the District Court when imposing the parole restriction.

¶23 We conclude that the parole restriction on Paulsrud's sentence does not constitute cruel and unusual punishment.

¶24 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ BETH BAKER